# Exhibit 6

## Declaration under Penalty of Perjury

I, R.G. Arntson, in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

**Complainant's Name: Denise N. Burgess**

**Agency Number: ARHQOSA07AUG03041**

**Claims being Investigated: Was the Complainant discriminated against based on her race (Black), sex (female), national origin (African-American), and retaliation (opposing unlawful discrimination) when:**

**1. On March 2, 2007, Kristine Belisle, the Complainant's former Special Inspector General for Iraq Reconstruction (SIGIR) Deputy, at the direction of Ginger Cruz, challenged the Complainant's authority?**

**2. On or about May 2007, Ms. Cruz, without consultation with the Complainant, took over an assignment that the Inspector General had given to the Complainant?**

**3. In July 2007, Ms. Cruz targeted the Complainant and her staff for termination when an equivalent unit had four full-time staff members and was slated for no reductions?**

**4. From June 2007 through July 2007, Ms. Cruz delayed hiring staff into the Complainant's section, forcing the Complainant to accomplish work previously done by two full-time individuals?**

**5. From June 2007 through July 2007, Ms. Cruz exclusively reviewed the Complainant's time and attendance records in hope of finding irregularities?**

**6. In July 2007, Ms. Cruz isolated the Complainant from the consultative process regarding media activities?**

**7. In July 2007, Ms. Cruz insisted on addressing one of the Complainant's staff members with an improper name?**

**8. On July 23, 2007, the Complainant received a memorandum from R.G. "Nick" Arntson, Chief of Staff for the SIGIR, informing her that effective September 1, 2007, her employment with the SIGIR agency would be terminated?**

**9. On July 23, 2007, Ms. Cruz retaliated against the Complainant for opposing employment practices that were racially discriminatory, by terminating her employment?**

Q: State your full name.

R: Richard Gordon Arntson; also known as Nick.

Q: Identify your race, national origin, and sex.

R: Caucasian, American, Male

Q: What were your position title, grade, and series as of June 2007?

R: Chief of Staff, SES (Administratively Determined), 343

Q: Briefly describe your duties in that position.

R: Responsible for the execution of support staff functions (human resources, budget, etc.); also the staff coordination, communications, and integration of tasks and functions between all the various staff directorates to ensure all the agency tasks were being completed.

Q: When were you assigned to the position you held as of June 2007? Are you in that same position now? If not, when did you leave that position?

R: October 2005. No. I left that position on 4 September 2007 and departed the Special Inspector General for Iraq Reconstruction on 30 September 2007 for the Department of State Inspector General Office.

Q: What is the name of the organization to which you were assigned when the claims at issue occurred?

R: I was the Chief of Staff for the Special Inspector General for Iraq Reconstruction during the time the alleged incidents occurred.

Q: Provide the names and position titles of your first and second level supervisors (the persons to whom you reported) as of June 2007.

R: Ambassador Robin Raphel, Deputy Inspector General; later Ms. Ginger Cruz, Deputy Inspector General, and Stuart Bowen, Special Inspector General for Iraq Reconstruction.

Q: What was your organizational relationship to the Complainant during her employment within SIGIR?

R: We were peers on the senior staff.

Q: Who hired the Complainant for her position within SIGIR? Did you provide your approval so that the Complainant could be hired?

R: Mr. Stuart Bowen hired the complainant after conferring with Ambassador Robin Raphel. Both had met the complainant during a meeting at the Department of Defense in December 2006. I did review the complainant's resume provided to me by Ambassador Robin Raphel but did not participate in any interviews with the complainant. I ensured the complainant's hiring packet was processed and met her for the first time when she reported to work in January 2007.

Q: The Complainant believes that Ginger Cruz and Stuart Bowen are responsible for the alleged discrimination against her. Please respond.

R: The complainant stated to me on several occasions from mid - July through August 2007 that she believed both her and Ms. Redmon were terminated because they were African-American and they conducted themselves differently than what Mr. Bowen and Ms. Cruz desired. The complainant stated to me that she believed Ms. Cruz felt threatened by the complainant's extensive resume of experience in the Foreign Service and communications management. Further the complainant believed because of both her strong objection to Ms. Cruz's decision concerning the termination of Ms. Redmon and Ms. Cruz's perception of the complainant's treatment of her friend Ms. Belisle, while serving as the complainant's deputy, that she was targeted for termination. The complainant stated to me she believed these were acts of discrimination and retaliation against her which she intended to file a formal complaint with the appropriate agencies.

Q: Respond to the Complainant's allegation that on March 2, 2007, Ms. Belisle, the Complainant's former SIGIR Deputy, at the direction of Ms. Cruz, challenged the Complainant's authority by performing media-related activity without first advising the Complainant.

R: Ms. Belisle made contact with one of her media sources without consulting the complainant concerning a story about our organization. Ms. Belisle informed me she had taken the action on the advice of Ms. Cruz because she felt the complainant was stifling her initiative and hurting her professional reputation with Belisle's media sources. My response to Ms. Belisle was Ms. Burgess, the complainant, was her supervisor and Ms. Burgess was held responsible and accountable for the actions of the complainant's subordinates by Mr. Bowen. I told Ms. Belisle it was inappropriate for Ms. Cruz to instruct Ms. Belisle to take such an action and also inappropriate for Ms. Belisle to follow Ms. Cruz's instructions.

Q: Respond to the Complainant's allegation that on or about May 2007, Ms. Cruz, without consultation with the Complainant, and because of the Complainant's race, national origin, and

sex, took over an assignment that you had given to the Complainant. Include in your response a description of that particular assignment.

R: The complainant had been given the responsibility based on her position and duties as the Assistant Inspector General for Public Affairs to maintain and keep current the organization's website. Ms. Cruz while reviewing the website noticed several out of date items which included Congressional testimony provided by Mr. Bowen early in the year. Ms. Cruz took it upon herself to inform Mr. Bowen of the missing items and volunteered to get the testimony and other items on the website current. Ms. Cruz then proceeded to contact Ms. Marthena Cowart, Assistant Inspector General for Congressional Affairs, concerning the missing testimony and the organization's Informational Technology (IT) staff about posting the missing testimony and other items without informing the complainant of her actions. The complainant was very upset with Ms. Cruz's actions and met with Mr. Bowen which then led to a subsequent meeting with Mr. Bowen, concerning a review of what went wrong with the website posting process. It was determined there were several staff failures in the posting of the testimonies to the website mostly outside the control of the complainant's staff section.

Q: Respond to the Complainant's allegation that in July 2007, Ms. Cruz targeted the Complainant and her staff for termination, because of the Complainant's race, national origin, sex, and in retaliation, when an equivalent unit had four full-time staff members and was slated for no reductions.

R: Shortly after Ms. Cruz was re-instated as the Deputy Inspector General, Ms. Cruz announced there would be a re-organization within the Congressional Affairs and Public Affairs staff sections due to budget issues. However, the only re-organization occurred within Public Affairs. The complainant's position was re-designated from Assistant Inspector General for Public Affairs to Director, Public Affairs. One staff assistant position (Ms. Patricia Redmon) was eliminated, the other staff assistant position was to be a shared asset with the Congressional Affairs office, and the Deputy Public Affairs position was to remain but stay unfilled. The Congressional Affairs office only changed two of its staff titles but did not reduce its staff level. I do not know if the Ms. Cruz did these things because of the complainant's race, national origin, sex, and/or in retaliation to the complainant.

Q: Respond to the Complainant's allegation that from June 2007, through July 2007, Ms. Cruz delayed hiring staff into the Complainant's section, forcing the Complainant to accomplish work previously done by two full-time individuals, and this was done because of the Complainant's race, national origin, sex, and in retaliation.

R: See response above. Ms. Cruz did delay hiring into certain staff sections pending her review and decisions concerning a re-organization.

Q: Respond to the Complainant's allegation that because of her race, national origin, sex, and in retaliation, from June 2007, through July 2007, Ms. Cruz exclusively reviewed the Complainant's time and attendance records in hope of finding irregularities.

R: Ms. Cruz requested that I provide her the complainant's time and attendance records because she believed the complainant was taking excessive time off for personal and medical

appointments during critical periods when she was needed at the office in preparation for and during our July 2007 quarterly report cycle.

Q: Did the Complainant inform you that Ms. Cruz had reviewed her records for that purpose? If so, when did she inform you, how did she inform you, and what action did you take in response?

R: I informed the complainant concerning Ms. Cruz's inquiry into the complainant's time and attendance records, which as a supervisor Ms. Cruz had the authority to do. I informed the complainant of Ms Cruz's inquiry and told the complainant she should be prepared to respond.

Q: Respond to the Complainant's allegation that in July 2007, Ms. Cruz isolated the Complainant from the consultative process regarding media activities, because of her race, national origin, sex, and in retaliation.

R: The complainant reported to me in July 2007 she was being excluded from discussions with Mr. Bowen concerning media strategy and decisions reference media activities by Ms. Cruz. I do not have any first hand knowledge of this action being taken by Ms. Cruz but from my previous experiences with Ms. Cruz and given Ms. Cruz's previous experience in communications and public affairs and Mr. Bowen's reliance on Ms. Cruz's opinion on such matters it is possible that the complainant was isolated from consultative process regarding media.

Q: Respond to the Complainant's allegation that in July 2007, Ms. Cruz insisted on addressing one of the Complainant's staff members with an improper name by referring to Patricia Redmon as "Pat." Include in your response whether you knew of that incident.

R: I was not a witness to the incident but both the complainant and Ms. Redmon made me aware of the incident. Both the complainant and Ms. Redmon considered this deliberate because it was well known since Ms. Redmon joined the organization in February 2007 that she did not like to be called Pat but Patricia. It was now July 2007 and both the complainant and Ms. Redmon believed it was a deliberate act on Ms. Cruz's part to demean Ms. Redmon personally.

Q: Why did Ms. Cruz use that name? Had Ms. Cruz or anyone else used that name before when addressing Ms. Redmon?

R: I do not know why Ms. Cruz used that name in addressing Ms. Redmon. Ms. Cruz and all other members of the staff who interacted with the Public Affairs office routinely had been informed and knew that Ms. Redmon did not like being called Pat but Patricia. Both the complainant and Ms. Redmon believed it was a deliberate act on Ms. Cruz's part to demonstrate her power over the complainant's staff.

Q: Did Ms. Redmon, or anyone else, object to being addressed as "Pat?" If so, who, when, and in what manner did she or he object? Describe what action management took when it became aware of the objection to the use of the name at issue.

R: When Ms. Redmon first arrived in February 2007 the complainant told every one who she was and that she preferred to be called Patricia not Pat. This included Ms. Cruz. Mr. Bowen called Ms. Redmon, Patricia as did all the senior staff. If an error occurred with a new staff

member it was usually handled directly either by Patricia or the complainant. I do not recall any flagrant or repetitive occurrences concerning calling Ms. Redmon, Patricia, until the reporting of the incident with Ms. Cruz by the complainant and Ms. Redmon in July 2007.

Q: Respond to the Complainant's allegation that on July 23, 2007, she received a memorandum from you informing her that effective September 1, 2007, her employment with the SIGIR agency would be terminated, and that this was done to her because of her race, national origin, sex, and in retaliation for having complained of Ms. Redmon's termination.

R: I was not part of the decision to terminate the complainant's employment. The decision was made by Ms. Cruz and Mr. Bowen along with advice of legal counsel. Ms. Cruz told me of the decision a few hours prior to the meeting the complainant had with Ms. Cruz and Mr. Patrick Bowers, Deputy General Counsel. Following the meeting the complainant asked for a written notification of her termination which as the Chief of Staff, I believed I had the responsibility to provide her. I drafted the notification and had the draft letter reviewed and approved by Ms. Cruz and Mr. Patrick Bowers, who met with the complainant about her termination before I signed it and provided it to the complainant.

Q: Respond to the Complainant's allegation that on July 23, 2007, Ms. Cruz retaliated against the Complainant, for complaining of Ms. Redmon's termination, by terminating the Complainant's employment.

R: Ms. Cruz received an email from the complainant stating she, Ms. Burgess, would be unable to attend a previously scheduled meeting because she had an appointment with the Office of Special Counsel that morning. Ms. Cruz informed me and forwarded me the email. She then asked to see both Deputy General Counsels Mr. Patrick Bowers and Mr. Justin Martell. I was informed later that morning by Ms. Cruz to arrange a meeting for that afternoon with the complainant, Ms. Cruz, and Mr. Bowers. Ms. Cruz and Mr. Bowers informed me separately that the complainant would be informed of her termination that afternoon.

Q: Were you aware of the Complainant having complained about Ms. Redmon's termination? If so, when did she complain, and when and how did you learn of it?

R: Yes. I do not recall the exact date but it was late June 2007 because we had intended to give all affected employees 30 day notice prior to the effective date of their termination which was around August 1, 2007. The complainant believed Ms. Redmon's termination was targeted at the complainant and her public affairs section to make them less effective and enable Ms. Cruz to terminate the complainant.

Q: What was the reason(s) for the Complainant's termination?

R: The official reason was staff re-organization but Ms. Cruz did state on several occasions she did not like the complainant personally, she did not believe the complainant was properly advising and assisting Mr. Bowen with media issues and activities, and it was reported to me from other staff members that Ms. Cruz was upset over the treatment and removal of Ms. Cruz's friend Ms. Belisle by the complainant.

Q: Did the Agency give you any indication of a restructuring prior to the termination of Ms. Redmon and the Complainant? If so, who told you, when were you told, and what specifically were you told?

R: As previously stated, shortly after Ms. Cruz was re-instated as the Deputy Inspector General, Ms. Cruz announced there would be a re-organization within the Congressional Affairs and Public Affairs staff sections due to budget issues. However, the only re-organization occurred within Public Affairs. The complainant's position was re-designated from Assistant Inspector General for Public Affairs to Director, Public Affairs. One staff assistant position (Ms. Patricia Redmon) was eliminated, the other staff assistant position was to be a shared asset with the Congressional Affairs office, and the Deputy Public Affairs position was to remain but stay unfilled. The Congressional Affairs office only changed two of its staff titles but did not reduce its staff level. Additional staff positions within the organization held by contractors would be converted to government and other contractor positions would be eliminated. Only the re-organization of the Congressional Affairs office and Public Affairs office was completed prior to my departure in Sept 2007. The remainder of the re-organization decisions was left for the new Chief of Staff to review and decide.

Q: What documents are created/used when terminating someone in a position such as the Complainant's? Were those documents used when terminating the Complainant?

R: The complainant was the first person at this level who was terminated. Previously persons in these senior staff positions had resigned. But based on the advice of counsel provided to Ms. Cruz the only document I was made aware of or involved with was the notification letter previously addressed above.

Q: Was Kristine Belisle's previous complaint against the Complainant a factor in the Complainant's termination?

R: I believe yes.

Q: Why did Ms. Belisle leave her employment with SIGIR in the early portion of calendar year 2007?

R: Ms. Belisle and the complainant were not able to work well together and it was causing frustration by both parties and undue stress to Ms. Belisle. Ms. Belisle believed she would be better off professionally in turning her attention full time to her own business and not arguing with the complainant her professional capabilities.

Q: Why did Ms. Belisle return to employment with SIGIR?

R: Ms. Belisle was contacted by Ms. Cruz in early August and told that the complainant had been terminated and Ms. Cruz asked Ms. Belisle to return to SIGIR.

Q: Was the Complainant's termination a factor in Ms. Belisle's return to employment with SIGIR?

R: Absolutely yes.

Q:  What was the reason(s) for the termination of Barbara Lewis and Patricia Redmon?

R:  Ms. Cruz believed that Barbara Lewis' cost (salary) and contribution to the quarterly report and our Lesson Learned projects were not warranted.  Ms. Cruz believed and requested Ms. Lewis to reduce her hours from 40 to 20 per week which Ms. Cruz believed was more representative of the actual hours needed by Ms. Lewis' skills and analysis.  Ms. Lewis disagreed and insisted she was needed 40 hours per week on these projects.  After a few weeks of awkward disagreement and discussion Barbara Lewis was released.

   Ms. Cruz did not believe Ms. Redmon was qualified or possessed the skills necessary to perform all the functions and duties which the complainant had hired Ms. Redmon to perform. Additionally, Ms. Cruz also believed the organization was paying too much for the position which Ms. Redmon occupied and for the performance of those duties; therefore both the position and Ms. Redmon were targeted for elimination over the objection of the complainant.  Ms. Cruz saw Ms. Redmon's position as an overage and unnecessary position; however that same position had existed within that staff directorate for over 3 years while Ms. Cruz previously served as Chief of Staff and the Deputy Inspector General.

Q:  Why was it that after the Complainant had been hired for only about seven months, it was determined that her section and position were no longer needed?  What changed within that seven-month period to make her termination necessary?

R:  The section was not eliminated but significantly reduced in staffing.  The position of Assistant Inspector General for Public Affairs was re-designated as Director, Public Affairs.  The Deputy Public Affairs position also still remained as of 4 Sept 2007 when I left my position as Chief of Staff.  Ms. Cruz believed due to her experience in communications and public affairs she could direct and manage a smaller public affairs section while still performing her duties as Deputy Inspector General.  The job description for the Assistant Inspector General for Public Affairs was re-written in August 2007 as the Director, Public Affairs.  Most of the public affairs policy and planning was placed under the responsibility of the Deputy Inspector General. Also, some of the website responsibilities were divided out to other staff sections reducing the requirements within the Public Affairs section and other responsibilities were eliminated.  All of these actions lead to the outcome of a smaller public affairs section then the organization had in January 2007.

Q:  Did the Complainant ever report to you or to any of her supervisors that she believed she was being harassed on her job?  If so, to whom did the Complainant report, when did the Complainant tell that person, how did she tell that person, what did the Complainant say, and what was management's response?

R:  Yes.  But the complainant's description of the harassment to me would be more accurately described as "being hassled" by Ms. Cruz with frequent verbal questioning and continual follow-up concerning tasks and projects assigned to the complainant.  The complainant stated that Ms. Cruz had knowingly established unrealistic timelines, based on Ms Cruz's stated experience in the communications and public relations workplace; to accomplish the assigned tasks.  The complainant also stated Ms. Cruz further denied her the authority to hire additional staff resources to accomplish these tasks in a timely manner.  The complainant believed these were all

deliberate actions to discredit her. There was no requirement at that time for a management response or action.

Q: Was anyone else involved in the harassment that the Complainant alleges? If so, who and in what manner?

R: No; to the best of my knowledge.

Q: Did you treat the Complainant differently in any manner during her employment with SIGIR because of her race, national origin, sex, or any previous protected EEO activity in which she participated?

R: NO.

Q: Are you aware of anyone having treated the Complainant differently because of her race, national origin, sex, or previous EEO participation?

R: NO.

Q: Do you have anything to add?

R: Yes. I had reminded both Mr. Patrick Bowers and Mr. Justin Martell, Deputy General Counsels advising Ms. Cruz concerning the re-organization of the Office of Public Affairs and the termination of Ms. Burgess, that the Office of General Counsel had previously informed me and other members of the senior staff on several occasions that during a re-organization the members of the organization whose positions were being eliminated must be offered other open staff positions for which they are qualified. I do not know if they reminded Ms. Cruz of this opinion but the complainant stated to me in August 2007 she was not offered another comparable position for which she was qualified by Ms. Cruz.

## END OF STATEMENT

I, R.G. Arntson, declare *(certify, verify or state)* under penalty of perjury, that the foregoing is true and correct.

_____                    _9 - 15 - 2008_
(Declarant's Signature)                                          (Date)