# Exhibit 9

# REPORT OF INVESTIGATION

OCT 1 4 2008

**Agency Number:**                                          ARHQOSA07AUG03041

**Activity Filed Against:**                                 Office of the Special Inspector General for
                                                            Iraq Reconstruction
                                                            Arlington, Virginia (VA)

**Complainant's Name and Address:**                          Denise N. Burgess

**Representatives' Names and Addresses:**                    Michael J. Baratz, Attorney at Law
                                                            Harry Lee, Attorney at Law
                                                            Steptoe & Johnson LLP
                                                            1330 Connecticut Avenue, NW
                                                            Washington, D.C. 20036-3902

                                                            Susan E. Huhta, Director, Equal
                                                            Employment Opportunity Project
                                                            Washington Lawyers' Committee for Civil
                                                            Rights & Urban Affairs
                                                            11 Dupont Circle, NW
                                                            Washington, D.C. 20036

**Date of Initial Contact with EEO Counselor:**              August 13, 2007

**Date Complaint Filed:**                                    October 28, 2007

**Date Investigation Requested:**                            January 25, 2008

**Date Received by IRD:**                                    February 11, 2008

**Dates of Investigation:**                                  August 26 – September 12, 2008

**Claims:**

Was Denise N. Burgess (hereafter referred to as the Complainant) discriminated against
based on her race (Black), national origin (African American), sex (female), and
retaliation (opposing unlawful discrimination) when:

1. On March 2, 2007, Ms. Kristine R. Belisle, the Complainant's former Special
Inspector General for Iraq Reconstruction (SIGIR) Deputy, at the direction of Ms. Ginger
M. Cruz, challenged the Complainant's authority.



2. On or about May 2007, Ms. Cruz, without consultation with the Complainant, took over an assignment that the Inspector General (IG) had given to the Complainant.

3. In July 2007, Ms. Cruz targeted the Complainant and her staff for termination when an equivalent unit had four full-time staff members and was slated for no reductions.

4. From June 2007, through July 2007, Ms. Cruz delayed hiring staff into the Complainant's section, forcing the Complainant to accomplish work previously done by two full-time individuals.

5. From June 2007, through July 2007, Ms. Cruz exclusively reviewed the Complainant's time and attendance records in hope of finding irregularities.

6. In July 2007, Ms. Cruz isolated the Complainant from the consultative process regarding media activities.

7. In July 2007, Ms. Cruz insisted on addressing one of the Complainant's staff members with an improper name.

8. On July 23, 2007, the Complainant received a memorandum from Mr. R.G. "Nick" Arntson, Chief of Staff for the SIGIR, informing her that effective September 1, 2007, her employment with the SIGIR agency would be terminated.

9. On July 23, 2007, Ms. Cruz retaliated against the Complainant for opposing employment practices that were racially discriminatory, by terminating her employment (Investigative File [IF] pages [pp] 77B-77C).

**Relief Requested:**

Compensatory and punitive damages (IF page [p] 4).

## PART I - BACKGROUND

When the Complainant was employed with SIGIR, she was assigned as the Assistant IG for Public Affairs, SES-4/AD/301/00, in Crystal City, VA. She began working in the position in January 2007, but her official date of assignment was February 4, 2007. Ms. Belisle performed the Complainant's duties prior to the Complainant's hire. Ms. Belisle's employment with the Agency officially ended on April 27, 2007. At the time of the Complainant's hire, Ms. Cruz was a Senior Advisor within SIGIR. In June 2007, Ms. Cruz became the Deputy IG, SIGIR, and as such was the Complainant's immediate supervisor. As of May 2007, the Complainant's Public Affairs section consisted of two employees, the Complainant and her assistant, Ms. Patricia N. Redmon, who was a contract employee. The Agency informed Ms. Redmon on or about July 19, 2007, that her employment with the Agency would end. On July 23, 2007, the Complainant expressed her dissatisfaction with the termination of her assistant by sending an email message to the Agency's senior managers. Later that day, the Agency advised the Complainant of her



2

termination. The Complainant's termination became effective on September 1, 2007 (IF pp 132, 168, 314, 364; Transcript [TR] pp 13-15, 82).

Table I-1 below provides the name, whether a Responsible Management Official (RMO), position held at the time of the alleged discrimination, relationship to the Complainant, self-identified race, national origin, sex, and knowledge of the Complainant's prior protected Equal Employment Opportunity (EEO) activity for each of the interviewed witnesses.

| NAME/RMO | POSITION/RELATIONSHIP | RACE/NATIONAL ORIGIN/SEX/EEO | SOURCE |
|---|---|---|---|
| Denise N. Burgess | Assistant IG for Public Affairs; Senior Executive Service (SES) Complainant | Black/Black American/female/NA | TR pp11, 13 |
| Ginger M. Cruz RMO | Deputy IG for Policy; SES First line supervisor | Asian American/Filipino American/female/no | TR pp 81, 83, 113 |
| *Stuart W. Bowen, Jr. RMO | SIGIR; Executive Service IV equivalent Second line supervisor | Caucasian/American/ male/no | IF pp 398, 401 |
| *Richard G. "Nick" Arntson RMO | Chief of Staff; SES Peers on the senior staff | Caucasian/American/ male/yes | IF pp 407-408, 411 |
| Janice E. Nisbet | Chief of Staffing and Operations Support, no assigned grade or pay band Servicing HR Representative | Caucasian/United States/female/no | TR pp 186-187, 196 |
| Patricia N. Redmon | Contractor, Administrative Special Assistant Supervised by Complainant | Black/African American/female/NA | TR pp 174-176 |
| Kristine R. Belisle | Contractor, Deputy Assistant IG for Public Affairs Formerly supervised by Complainant | Caucasian/American/ female/NA | TR pp 211-212 |

**TABLE I-1.** Witnesses who provided testimony.

*Testimony provided by responding to interrogatories.

Data provided by the Agency shows that as of June 1, 2007, SIGIR consisted of 109 federal civil service employees. The race and national origin (RNO) composition of SIGIR consisted of 92 White, ten Black or African American, four Asian, two Hispanic or Latino, and one American Indian or Alaska Native employee. Ms. Cruz, who described herself as Asian American when providing her testimony, is recorded as being White on the SIGIR personnel roster. The data reveals that 81 employees are male, and 28 are female. The Agency did not provide data to disclose how many of its employees had filed EEO complaints (IF pp 152-154).

There was considerable delay in scheduling the fact-finding conference (FFC). The Investigator distributed a scheduling letter dated April 25, 2008, scheduling the FFC to occur on May 13,

2008. On May 9, 2008, the Agency postponed the FFC because Ms. Cruz respectfully declined to appear as a witness. Ms. Cruz's counsel advised her to take that action because she was also appearing before a grand jury investigation of the Complainant's termination from SIGIR. Upon the conclusion of the grand jury investigation, Ms. Cruz was willing to appear before the FFC, and the FFC was re-scheduled for August 26, 2008 (IF pp 439-448, 456-460, 468-472).

The Complainant requested that the Investigation include the testimony of 12 witnesses that she identified. The Investigator approved of four of these witnesses and added three others that he believed had information of relevance to the claims. The Investigator decided not to interview eight of the requested witnesses because their testimony would have duplicated that of more knowledgeable witnesses, or was not expected to be relevant. During the preliminary conference, the Investigator explained to the Complainant and her Representatives that if they were to obtain written statements from any of the discounted witnesses, the Investigator would include those statements in the IF. Neither the Complainant nor her Representatives submitted statements from these witnesses (IF p 4; TR pp 6-7)

Three of the scheduled witnesses were not able to be present at the FFC. Mr. Bowen and Mr. Arntson were working overseas because August 26, 2008, and the Agency stated that it was unable to contact Ms. Barbara Lewis (Caucasian, Arab American, female, unknown EEO), who was working as a contractor. Mr. Bowen and Mr. Arntson provided their declarations in response to the Investigator's interrogatories. Those declarations are included within the IF (IF pp 397-414, 473-479).

The Investigator instructed the Complainant and her Representatives during the preliminary meeting that he would give the Complainant the opportunity to rebut the testimony of the witnesses both during the FFC and afterward in response to the declarations of Mr. Bowen and Mr. Arntson. The Complainant declined to provide rebuttal comments throughout the FFC, and her Representatives later advised that they decided not to provide a rebuttal to either Mr. Bowen or Mr. Arntson's declarations. This report of investigation is written based upon the evidence available. The Investigator's Declaration at Exhibit F-21 addresses specifics of the investigative process (IF pp 416, 485-486; TR pp 173, 186, 210, 236).

## PART II – DISCUSSION AND ANALYSIS

### Complainant's allegations:

The Complainant testifies that her previous protected EEO activity consisted of two actions that related to the termination of contract employee assistant, Ms. Redmon. First, the Complainant verbally commented to Ms. Cruz on the Thursday, July 19, 2007, that she was dissatisfied upon learning of Ms. Redmon's termination. Secondly, the Complainant sent an email message the following Monday, July 23, 2007, in which she clearly and explicitly expressed that she believed the Agency's termination of Ms. Redmon was racially motivated and discriminatory. She also states that she believes that termination was racially discriminatory toward her (the Complainant). The Complainant states that she addressed that email message to those who

4

would be involved in any discussion regarding discrimination; this includes Mr. Bowen, Mr. Arntson, and Ms. Nisbet (IF p 301; TR pp 12-13, 34-35).

The Complainant testifies that Ms. Cruz made derogatory comments in a staff meeting regarding people who file EEO complaints. Ms. Cruz made the comments in the spring of 2007, not long after she (Ms. Cruz) arrived in her position. The Complainant states that since she is a Black woman, and EEO discrimination cases are often associated with Black Americans, she thought that Ms. Cruz was directing the remark toward her (TR pp 19-20).

The Complainant testifies that another instance of Ms. Cruz's discrimination toward Black employees was her continuing to refer to Ms. Redmon as "Pat." Ms. Cruz called Ms. Redmon Pat on four occasions, even though Ms. Redmon and the Complainant had told Ms. Cruz that she preferred to be called Patricia. When Ms. Redmond corrected Ms. Cruz on this matter, Ms. Cruz appeared to be very annoyed. The Complainant asserts that this act of disrespect had racial overtones, and is particularly derogatory when directed at Black Americans (TR pp 20-22, 48-49).

The Complainant accounts that Ms. Cruz undercut her authority on one occasion when, even though she (the Complainant) had been communicating with a Washington Post reporter, Ms. Cruz later spoke with that reporter and never informed her (the Complainant) that she had done so. This incident occurred in June or July of 2007 (TR pp 22-24, 47).

The Complainant relates that there was another instance where Ms. Cruz undercut her authority with her colleagues. Mr. Bowen asked the Complainant to compile recommendations for how to better release a quarterly report. The Complainant held meetings with other Assistant IGs, created a draft set of recommendations, and asked her colleagues to review them and respond to her the following Monday. The Complainant was off work the previous Thursday and Friday, and when she returned to work she discovered that Ms. Cruz had taken an old set of recommendations and issued them as the new rules. The Complainant's colleagues came to her and asked what had happened since Mr. Bowen had given that assignment to her (the Complainant) (TR pp 24-25, 39, 68-69).

The Complainant testifies that she and Ms. Belisle had often discussed that information relating media requests for interviews of Mr. Bowen had to first go through the Complainant so she could do the necessary research before advising him whether to conduct the interview. However, the Complainant received an email message from Mr. Bowen, dated March 2, 2007, that revealed Ms. Belisle had, at Ms. Cruz's direction, contacted Mr. Bowen regarding an interview without first informing the Complainant. The Complainant testifies that she did not immediately consider that action to have been discriminatory with regard to her race and national origin. However, when viewed in the context of all the other derogatory actions, she realized the Agency did them in order to diminish her because she was Black and "did not know her place" (IF pp 254-256; TR pp 26-29, 39, 64).

The Complainant asserts that the Agency's termination of Ms. Redmon was the "final straw" for her. The Complainant believes that Ms. Redmon's termination was racially motivated because

Ms. Redmon is a well-spoken, well-educated Black woman, who by demanding to be addressed by her correct name revealed that she "did not know her place." The Complainant states that she felt that Ms. Redmon's termination was intended to target both her and Ms. Redmon since their section consisted of only them, two African American women. The Complainant asserts that she told Ms. Cruz that without her assistant, it was going to be difficult for her (the Complainant) to perform her required duties. The Complainant states that the Agency terminated her (the Complainant) on the Monday, July 23, 2007, following Ms. Redmon's termination, and only hours after she sent an email message in which she disputed Ms. Redmon's termination. The Complainant contends her termination was in retaliation for sending that email message because during her conversation with Ms. Cruz the previous Thursday regarding Ms. Redmon's termination, Ms. Cruz told the Complainant that other employees would assist her with the duties that Ms. Redmon had performed, thus indicating at that time that the Agency was not intending to terminate the Complainant (IF p 301; TR pp 29-30, 35-37).

The Complainant states that her section, Public Affairs, and another section within SIGIR, Congressional Affairs, were meant to be staffed equally since their workloads were somewhat equal. When Ms. Cruz told her she was losing her assistant, the Complainant expected Congressional Affairs to also lose someone. However, even though Congressional Affairs had four people, to include two SES level employees, that section lost no one. The Complainant states that Public Affairs had three employees, one of whom was absent due to being hospitalized. The Complainant contends that if the Agency's reason for terminating her and Ms. Redmon was to save money, then its actions were illogical since much more money could have been saved by terminating an SES employee than a staff level employee. The Complainant states that the Agency's illogical actions caused her to realize that discrimination was the true reason for what was occurring (TR pp 40-42).

The Complainant states that the Agency had selected Mr. David Mays (race – not asked, national origin – not asked, male, EEO – NA) to be her deputy, but Ms. Cruz told her that his hire was placed on hold until she (Ms. Cruz) familiarized herself with the Agency. The Agency never hired Mr. Mays (TR pp 43-44).

The Complainant testifies that in her termination meeting, Ms. Cruz told her that part of the reason the Agency was terminating her was because SIGIR required the "right mix of people." The Complainant states that she asked for the criteria that determined who was included within the right mix. The Complainant testifies that Ms. Cruz's inability to answer the question also indicated that race was a factor (TR pp 30-31).

Although most of the incidents she relates pertain to actions by Ms. Cruz, the Complainant contends that Mr. Bowen is also culpable because as head of the organization, he approved of the Agency's discriminatory actions. The Complainant states that Mr. Bowen was one of the persons who interviewed and hired her for the position, and he also told her, only a few weeks before her termination, that she was doing a great job and would be with the Agency for the duration. The Complainant states that given those events, she does not understand why Mr. Bowen allowed her termination (TR pp 32-33).

The Complainant asserts that the Agency acknowledged her outstanding performance by giving her a certification of appreciation on her last day of employment. Only a few weeks before her dismissal, she received an $8,500.00 bonus, and Mr. Bowen gave her a letter of commendation (TR pp 33-34).

The Complainant testifies that the Agency had no official reorganization. There were no management meetings, discussions, plans, or any evidence of reorganization. The Complainant states that when the Agency terminated her, she was told that her section was being abolished. However, the Agency had already hired someone else, Ms. Belisle, to take her position (TR pp 44-45, 47, 56).

The Complainant testifies that three people in the Agency, one of whom was Mr. Arntson, told her in about June or July 2007, that Ms. Cruz was reviewing her time and attendance records to discover any irregularities, such as claimed overtime that she had not worked. The Complainant states that no one informed her of any irregularities being discovered (TR pp 45-47).

The Complainant testifies that the Agency treated her differently than it did the SES level Assistant IG for Congressional Affairs, Ms. Marthena Cowart (Caucasian, American, female, EEO – unknown), and Ms. Belisle. The Complainant states that both Ms. Cowart and Ms. Belisle had performance issues, whereas she (the Complainant) did not; however the Agency allowed Ms. Belisle to work until her contract ended during her first period of employment, and it moved Ms. Cowart to another position and did not terminate Ms. Cowart as it did her (TR pp 52-55, 79).

The Complainant testifies that, prior to her termination, she did not speak or report to any member of management regarding the harassment she alleges because she had hoped to tolerate the situation and maintain her employment. She states that on the day of her termination, she attempted to speak with the EEO Representative, but no one knew who that was. She states that she may have spoken with Ms. Nisbet about the alleged discrimination (TR pp 55-56, 66).

**Management's response:**

**Testimony of Ginger M. Cruz:**

Ms. Cruz testifies that she advised Ms. Belisle on March 2, 2007, to send an email message directly to Mr. Bowen regarding the request for an interview. Ms. Cruz contends that she directed that action because the request was time-sensitive and Ms. Belisle had not been able to locate Ms. Burgess. She also states that she told Ms. Belisle to ensure that she (Ms. Cruz) and the Complainant received a copy of the message (TR p 84).

With regard to her taking over an assignment relating to release procedures for quarterly reports, Ms. Cruz testifies that Mr. Bowen had asked the Complainant to prepare policy on that matter. The Complainant coordinated with the senior staff and gave a draft to Mr. Bowen. Mr. Bowen was not satisfied with the draft, and asked that Ms. Cruz discuss it with the Complainant. Ms. Cruz states that she spoke once with the Complainant on her progress with the changes, and then

7

Mr. Bowen directed her (Ms. Cruz) to provide him the final policy with the specific views on timing that he had mentioned to her (TR pp 85-86).

Ms. Cruz testifies that at the time she reduced the Public Affairs section, she reduced the Congressional Affairs section as well. She states that she eliminated the positions that were not mission critical. Ms. Cruz asserts that Public Affairs was downgraded to a single position, that of director. At the same time, she notified a White male, a White female, and a Black female in Congressional Affairs that they needed to find other positions due to their positions being eliminated. Among the contractors who the Agency terminated were a Black female (Ms. Redmon), a White female, and a Black male. Ms. Cruz states that at that time she also converted seven contractor personnel to mission critical government positions. These seven consisted of four Black females, one Black male, one White female, and one White male. Ms. Cruz responds that two of the Congressional Affairs employees whose positions were eliminated, the White male and White female, were able to reassign into other SIGIR positions. Ms. Cruz also states that there was no position at a level to which the Complainant could have been reassigned, but that she did offer to provide whatever assistance she could to help the Complainant during her transition to other employment (TR pp 86-90).

Ms. Cruz testifies that the Agency is temporary and undergoes a strategic planning process every three months to evaluate how well it meets the mission with the number of employees assigned. She states that 250 employees have left since the Agency was created four years ago. The Agency is unlike the normal long-term bureaucratic federal organizations in that it constantly evaluates itself to determine how to accomplish its mission with the leanest staff possible. In December 2006, four employees were completing the duties in both Congressional and Public Affairs, but by early 2007, the number of employees in those sections had increased to eight (TR pp 90-91).

In the spring of 2007, the Office of Management and Budget (OMB) expressed concern that SIGIR's budget was increasing dramatically. OMB told SIGIR that there was no Congressional mandate for SIGIR to have a press function, and it was unacceptable that the in-house staff and the budget were growing. Ms. Cruz also testifies that contractor employees were proving to be expensive for SIGIR (TR pp 92-97).

Ms. Cruz testifies that she was sorry that the Complainant lost her position. The Agency tried to assist the Complainant by giving her 30 days of administrative leave as she searched for another job, and the certificate of appreciation that the Complainant received prior to her termination was another attempt to assist her (TR p 99).

Ms. Cruz asserts that when the Agency hires employees, it is for a temporary appointment of 13 months, an appointment that the Agency may terminate anytime during that 13-month period (TR p 100).

Ms. Cruz testifies that she did not offer the Director, Public Affairs position that Ms. Belisle would fill to the Complainant because the Complainant had expressed during the two months prior to her termination that she would be unable to accomplish the duties of Public Affairs

8

without there being four people in the section. Ms. Cruz states that she approached Ms. Belisle for the position because her skills were not managerial; Ms. Belisle was not above doing anything such as making telephone calls, or doing the "heavy lifting" herself. Ms. Belisle also was conversant regarding audits, inspections, and the quarterly report, whereas the Complainant was not. Ms. Cruz asserts that the hiring of Ms. Belisle would enable SIGIR to realize a large financial savings in that Ms. Belisle was able to perform all of the activities that the Complainant stated she needed a four-person section to accomplish (IF p 7; TR pp 100-103).

Ms. Cruz testifies that when she used the phrase, "right mix of people," when speaking with the Complainant and other employees, she meant that SIGIR needed the substantive mix of individuals that included auditors, inspectors, and investigators, and less nonessential and support positions, such as those in Public Affairs and Congressional Affairs (TR pp 106-107).

Ms. Cruz asserts that when she became the Deputy for Policy, she sent an email message to all the employees who reported directly to her, the Complainant, Ralph S. Michaud (White, male, EEO – unknown), and Ms. Cowart, that requested that they all send their timesheets to her. Ms. Cruz states that as their supervisor, she made sure that she reviewed their timesheets for accuracy. She contends that it was good management to do so, and was not directed at any one individual. Ms. Cruz states that she never had any issues with the Complainant's timesheets (IF p 140; TR pp 109-110).

With regard to the Complainant's claim that she was isolating the Complainant from the consultative process of media activities, Ms. Cruz testifies that she did not isolate the Complainant. Ms. Cruz states that whenever a person brought media issues to her attention and excluded the Complainant, she made certain that she directed that person to the Complainant, or that she herself included the Complainant in the issue (TR p 110-111).

Ms. Cruz testifies that because she has known and currently speaks with several persons named Pat, she made the mistake of referring to Ms. Redmon as Pat also. Ms. Cruz states that she apologized when Ms. Redmon brought the error to her attention. Ms. Cruz contends that she meant no offense by calling Ms. Redmon Pat. When the Complainant corrected her on the same issue, Ms. Cruz states that she was embarrassed, and believes that embarrassment was the reaction that the Complainant observed (TR pp 111-112).

Ms. Cruz testifies that the termination of the Complainant was not related to any sort of retaliation. Ms. Cruz states that when she told the Complainant on July 19, 2007, of her intent to remove Ms. Redmon from employment, she (Ms. Cruz) already had decided that she would also soon release the Complainant. She contends that the plans for reorganization had been ongoing since June 20, 2007. Mr. Bowen told her to conduct reorganization in the most expedient manner possible. Ms. Cruz states that she informed Mr. Bowen of her decision to terminate the Complainant about two weeks prior to the Complainant being so notified. She asserts that the termination had nothing to do with the email message the Complainant sent complaining of Ms. Redmon's termination. Ms. Cruz testifies that she is a minority female who has been an activist for minority issues. She asserts that the Complainant's email message did not state that the Complainant believed the Agency was terminating Ms. Redmon because she is African

American. Ms. Cruz testifies that the Complainant had often related that she and Ms. Redmon were good friends who had worked together for over ten years, so she (Ms. Cruz) believed the Complainant's email message was intended to try to save Ms. Redmon's employment because of their friendship. Ms. Cruz states that her termination of the Complainant did not occur on the same day she released Ms. Redmon because she had not yet discussed the Complainant's termination with the General Counsel, James P. Bowers (White, male, EEO – unknown). Ms. Cruz states that she included the Agency's General Counsel, Ms. Nisbet of HR, and Mr. Arntson in on the Complainant's termination, and none of them believed there were any negative issues with the action (IF p 140; TR pp 113-116, 121, 128, 143-145, 150, 152, 157, 160, 163-164).

Ms. Cruz testifies that her comments to the Complainant about persons who had filed complaints were in specific reference to people who had filed anonymous complaints. Ms. Cruz asserts that she has been the target of a full-blown anonymous attack against her character by disgruntled former employees who used anonymous media contacts to slander and libel her in public. She mentioned this to the Complainant because it was the Complainant who was receiving calls from the media about those attacks. Ms. Cruz asserts that the persons who filed those complaints against her were not minorities, but were almost exclusively White males (TR pp 118-119).

Ms. Cruz testifies that the General Counsel was present at the Complainant's termination, but was not present at the termination of Ms. Cowart. Ms. Cruz states that because she noticed the Complainant was sending copies of much of her email correspondence to the General Counsel, she thought it was prudent to maintain transparency by having the General Counsel present. Ms. Cruz explains that by the nature of the Complainant's association with media, the Agency could not allow the person who performed all external relations for the Agency to continue to speak for the organization because of the obvious bad feelings that person (the Complainant) would develop. For that reason, the Agency gave the Complainant paid administrative leave while she sought other employment (TR pp 153-154, 156).

Ms. Cruz testifies that the reorganization she implemented attained the targeted amount for savings of $2 million (TR p 165).

Ms. Cruz contends that she offered Ms. Belisle the Director of Public Affairs position prior to receiving the email message from the Complainant on July 23, 2007, in which the Complainant complained about Ms. Redmon's termination (IF p 301; TR pp 171-172).

### Declaration of Stuart W. Bowen, Jr.:

Mr. Bowen declares that he identified the Complainant for employment with the Agency, and approved her hire (IF p 399).

Mr. Bowen denies that he, Ms. Cruz, or any Agency employee discriminated against the Complainant (IF p 399).

Mr. Bowen states that Ms. Belisle sent him an email message on March 2, 2007, regarding a media contact, in which she copied the Complainant and Ms. Cruz. He believes that Ms. Belisle acted professionally and did not challenge the Complainant's authority (IF p 399).

Mr. Bowen asserts that Ms. Belisle's complaint against the Complainant was not a factor in the Agency's termination of the Complainant (IF p 402).

Mr. Bowen declares that in the spring and summer of 2007, the budget situation changed and SIGIR came under financial pressure from OMB, which made reductions in staffing necessary. He tasked Ms. Cruz to reduce the number of positions in non-core functions and to cut contractor costs. As a result, the Agency reduced staff in Public Affairs and in Congressional Affairs, and reduced Agency presence in Iraq. Mr. Bowen contends that the Complainant's termination was in conjunction with this reorganization and was not related to her race, national origin, sex, or retaliation for any complaint (IF pp 400, 402-403).

Mr. Bowen contends that he had several discussions during the time period at issue with both Ms. Cruz and Mr. Arntson regarding the reorganization. He states that he does not recall the specific dates and times of those discussions (IF p 404).

Mr. Bowen contends given that SIGIR was under budget constraints, it was appropriate to refrain from hiring additional staff during the June 2007, through July 2007, time period. He believes that the workload in Public Affairs was sufficient for one person to manage. With there no longer being a staff in Public Affairs, the Agency no longer needed the Complainant's skill sets. One person has succeeded in accomplishing the workload in Public Affairs for over the past year (IF pp 400, 403).

Mr. Bowen states that as the Complainant's supervisor, Ms. Cruz was required to approve her time and attendance records (IF p 400).

Mr. Bowen declares that the memorandum, dated July 23, 2007, that terminated the Complainant's employment effective September 1, 2007, was based on a necessary reorganization within the Agency, and was not produced because of the Complainant's race, national origin, sex, or retaliation for complaining of Ms. Redmon's termination (IF p 401).

Mr. Bowen declares that he does not recall knowing of the Complainant having complained of Ms. Redmon's termination, until being advised of it within the instant EEO complaint (IF p 401).

Mr. Bowen declares that the Agency created the position of Director, Public Affairs as part of the reorganization, and that Ms. Belisle accepted that position which Ms. Cruz offered to her (IF p 402).

Mr. Bowen states that contractor employees were considerably more expensive than direct hire employees. The Agency terminated contractor employees Ms. Redmon and Ms. Lewis as part of the budget constraints that it addressed by reducing the number of contractor employees (IF p 402).

Mr. Bowen declares that he has no knowledge of the Complainant having reported harassment to him or anyone else (IF p 403).

**Declaration of Richard G. Arntson:**

Mr. Arntson declares that on several occasions from mid July through August 2007, the Complainant stated to him that she believed she and Ms. Redmon were terminated because they were African American and conducted themselves differently than how Mr. Bowen or Ms. Cruz desired. The Complainant also stated to Mr. Arntson that she believed Ms. Cruz felt threatened by the Complainant's extensive experience in the Foreign Service and communications management. Mr. Arntson states that the Complainant felt that she was targeted for termination because of her treatment of Ms. Cruz's friend, Ms. Belisle (IF p 408).

Mr. Arntson declares that Ms. Belisle informed him that on the advice of Ms. Cruz, she contacted one of her media sources without first consulting with the Complainant on March 2, 2007, because Ms. Belisle felt the Complainant was stifling her initiative and hurting her professional reputation with media sources (IF p 408).

Mr. Arntson declares that Ms. Belisle left her employment with SIGIR because she and the Complainant were not able to work well together, and it was causing them frustration and was stressful to Ms. Belisle. He contends that Ms. Belisle believed that she would be better off professionally to turn her attention full time to her own business and to not argue with the Complainant over her professional capabilities. Mr. Arntson asserts that the Complainant's termination was a factor in Ms. Belisle's decision to return to SIGIR (IF p 412).

Mr. Arntson states that the Complainant had the responsibility to maintain the Agency's website. Ms. Cruz noticed that several items on the website were out of date. Ms. Cruz informed Mr. Bowen and volunteered to update the website. Mr. Arntson states that Ms. Cruz then directed Ms. Cowart and the Informational Technology staff to provide missing Congressional testimony for the website, without informing the Complainant of her actions. The Complainant was very upset when she learned of Ms. Cruz's actions and met with Mr. Bowen. A subsequent review of the website posting process determined that most of the staff failures were outside of the Complainant's staff section (IF p 409).

Mr. Arntson declares that shortly after Ms. Cruz was reinstated as the Deputy IG, she announced that there would be reorganization within the Public Affairs and Congressional Affairs staff sections because of budget issues. Mr. Arntson contends that only the Public Affairs staff was reorganized, while the Congressional Affairs office only changed two staff titles without reducing its staff level. Mr. Arntson states that he does not know if Ms. Cruz's manner of reorganization was because of the Complainant's race, national origin, sex, or retaliation (IF pp 409, 412).

Mr. Arntson declares that Ms. Cruz asked him to provide her the Complainant's time and attendance records because she believed that the Complainant was taking excessive time off for personal and medical appointments during critical times when she was needed to prepare for the

July 2007, quarterly report cycle. Mr. Arntson states that he informed the Complainant of Ms. Cruz's inquiry into her time and attendance records, and told her to be prepared to respond (IF pp 409-410).

Mr. Arntson contends that in July 2007, the Complainant reported to him that Ms. Cruz was excluding her from discussions with Mr. Bowen regarding media strategy and activities. He states that he has no first hand knowledge of Ms. Cruz excluding the Complainant in this manner, but his previous experience with Ms. Cruz and Mr. Bowen's reliance on Ms. Cruz leads him to believe that it was possible that Ms. Cruz did indeed isolate the Complainant from the consultative process regarding media (IF p 410).

Mr. Arntson declares that both the Complainant and Ms. Redmon informed him that Ms. Cruz referred to Ms. Redmon as Pat. Both women considered Ms. Cruz's action to be deliberate because it was well known ever since Ms. Redmon joined the Agency in February 2007, that she preferred to be called Patricia. Mr. Arntson states that the Complainant and Ms. Redmon thought the action was meant to demean Ms. Redmon because as of July 2007, Ms. Cruz continued to make this error (IF pp 410-411).

Mr. Arntson declares that he was not part of the decision to terminate the Complainant's employment; Ms. Cruz, Mr. Bowen, and the General Counsel (Mr. Bowers) made that decision. Mr. Arntson states that Ms. Cruz informed him of the decision a few hours prior to when Ms. Cruz and the General Counsel informed the Complainant of her termination. Following the notification of her termination, the Complainant asked him (Mr. Arntson) for a written notification of her termination. He states that he drafted the letter and obtained a review from Ms. Cruz and the General Counsel before he (Mr. Arntson) signed and then gave it to the Complainant (IF p 411).

Mr. Arntson declares that on the day that the Complainant was to be informed of her termination, Ms. Cruz received an email message from the Complainant, which Ms. Cruz forwarded to Mr. Arntson, stating that the Complainant could not attend a previously scheduled meeting because she had an appointment with the Office of Special Counsel. Ms. Cruz asked him to arrange for a meeting later that afternoon between the Complainant, Ms. Cruz, and Mr. Bowers, in which the Complainant would receive notice of her termination (IF p 411).

Mr. Arntson declares that Ms. Cruz did not believe that Ms. Redmon was qualified to perform all the functions and duties the Complainant had hired her to perform. Ms. Cruz also believed that the Agency was paying too much for the position that Ms. Redmon occupied for the performance of those duties. Therefore, Ms. Cruz targeted Ms. Redmon and the position she filled for elimination (IF p 413).

Mr. Arntson declares that he was aware of the Complainant having complained of Ms. Redmon's termination, but cannot recall the exact date. He states that the Complainant believed Ms. Redmon's termination was targeted at her (the Complainant) and her Public Affairs section to make them less effective and enable Ms. Cruz to terminate her (IF p 411).

Mr. Arntson declares that although the official reason for the Complainant's termination was the staff reorganization, Ms. Cruz had stated on several occasions that she did not like the Complainant personally, and that she did not believe the Complainant properly advised and assisted Mr. Bowen. Mr. Arntson also states that other staff members told him that Ms. Cruz was upset over the Complainant's treatment and removal of Ms. Cruz's friend, Ms. Belisle. Mr. Arntson believes that Ms. Belisle's complaint against the Complainant was a factor in the Complainant's termination (IF pp 411-412).

Mr. Arntson declares that Ms. Cruz believed that due to her experience in communications and public affairs, she could direct and manage a smaller Public Affairs section while still performing her duties as the Deputy IG. Many of the duties of the Public Affairs section were divided among the Deputy IG and other staff sections (IF p 413).

Mr. Arntson declares that the Complainant complained to him of Ms. Cruz harassing her. He states that the Complainant's description of the harassment consisted of "being hassled" by Ms. Cruz's frequent questioning and continual follow-up concerning tasks and projects assigned to the Complainant. The Complainant reported that Ms. Cruz knowingly established unrealistic timelines, and denied her the opportunity to hire additional staff to accomplish the assigned tasks. The Complainant told Mr. Arntson that she believed these actions were intended to discredit her (IF pp 413-414).

Mr. Arntson declares that he is aware of no one having treated the Complainant differently than other employees because of her race, national origin, sex, or previous EEO participation. He also states that during reorganization, employees who lose their positions must be offered other open staff positions for which they qualify. Mr. Arntson states that the Complainant told him in August 2007, that Ms. Cruz did not offer her another comparable position for which she was qualified (IF p 414).

**Testimony of Janice E. Nisbet:**

Ms. Nisbet testifies that she has no knowledge of Ms. Cruz or Mr. Bowen discriminating against the Complainant. Ms. Nisbet states that she was out of the country on vacation when the Agency terminated the Complainant. Upon her return, she received an email message from the Complainant, and a letter drafted by Mr. Arntson stating that the Public Affairs section had been reorganized and the Complainant had been terminated. Ms. Nisbet contends that her only role in what occurred was to process the termination by placing information into the personnel system (TR pp 189-191, 193).

Ms. Nisbet states she noticed that reorganization actions, in addition to that which caused the Complainant's termination, occurred within the Agency. In July 2007, the Agency reduced its slots in Iraq from 55, down to 30 (TR pp 193, 195).

Ms. Nisbet testifies that she does not believe that the Complainant's race, national origin, sex, or previous EEO activity were factors in her termination, and she is not aware of anyone having treated the Complainant differently because of those protected factors (TR p 196).

14



Ms. Nisbet states that in July 2007, the Complainant told her that the Agency would not hire a previously selected candidate for a position in Public Affairs because of budget concerns and uncertainties about funding. She states that there was also a halt in recruitment at that time (TR pp197-199).

Ms. Nisbet contends that it was within the last week of July 2007, or the first week in August 2007, when she first heard that Ms. Belisle was returning to work for SIGIR (TR pp 202-203).

Ms. Nisbet states that it is her understanding that the Chief of Staff is responsible for ensuring that reorganizations and/or terminations resulting from reorganizations are accomplished in a nondiscriminatory manner (TR p 207).

**Complainant's rebuttal:**

The Complainant and her Representatives did not rebut the testimony of the primary management witnesses during the FFC. They also declined to submit a written rebuttal to the declarations of Mr. Bowen and Mr. Arntson (IF pp 485-486; TR pp 173, 186, 210, 236).

**Testimony of other witnesses:**

**Testimony of Patricia N. Redmon:**

Ms. Redmon testifies that when she first began working for SIGIR, Mr. Bowen frequently stopped at her office to speak with her about work matters. However, about two months prior to her termination, Mr. Bowen abruptly stopped talking to her. Ms. Redmon states that she noticed the same behavior from Mr. Bowen with regard to the Complainant (TR pp 177-178, 183).

Ms. Redmon states that she recalls that she and the Complainant were alienated by the other employees prior to their terminations (TR p 179).

Ms. Redmon testifies that she and the Complainant noticed that Ms. Cruz began performing their duties, and letting them know what she had done afterward (TR p 184).

Ms. Redmon states that her contractor supervisor informed her that she was terminated for financial reasons, but she does not believe that is the true reason because since before Ms. Cruz's arrival at SIGIR, rumors were circulating about how easily Ms. Cruz would fire employees. Ms. Redmon relates that after the Complainant had corrected Ms. Cruz on more than one occasion not to refer to her (Ms. Redmon) as Pat, Ms. Cruz continued to call her Pat. Ms. Redmon states that when she told Ms. Cruz that she preferred to be called Patricia, Ms. Cruz's response was to say, "Oh, Pat. I don't know why I can't remember that." Ms. Redmon states that she did not consider being called Pat as being racist, but that it was a sign of disrespect for her. Ms. Redmon testifies that it was within the same week of her exchange with Ms. Cruz that she (Ms. Redmon) was informed of her termination (TR pp 181-182, 185).



Burgess, ARHQOSA07AUG03041

### Testimony of Kristine R. Belisle:

Ms. Belisle testifies that she had previously worked for SIGIR, during the first part of 2007, as the Deputy Assistant IG for Public Affairs. Ms. Belisle states that in January 2007, she managed the duties of both Public Affairs and Congressional Affairs because her supervisor had quit. The Chief of Staff asked her to assume the supervisory duties of both sections until the Agency's quarterly report was released at the end of January. Ms. Belisle asserts that she was then to transition the responsibilities to the two newly hired Assistant IGs for both sections, the Complainant and Ms. Cowart, and was to become the Complainant's deputy (TR pp 212-214).

Ms. Belisle asserts that she was not insubordinate to the Complainant and did all that she could to make the Complainant's transition into SIGIR as easy as possible. With regard to the incident of March 2, 2007, Ms. Belisle states that she received a call from a reporter who wanted to quickly interview Mr. Bowen before he left the country. She called the Complainant, but did not get an answer. After her call was not returned after two hours, Ms. Belisle states that she sent an email message to Mr. Bowen, and copied the Complainant, so they were aware of this request for an interview (TR p 219).

Ms. Belisle testifies that she left her first period of employment with SIGIR in early 2007, because the Complainant did not like working with her. The Complainant decided that she (Ms. Belisle) could continue working in Public Affairs, but only as her secretary. Ms. Belisle states that she declined the secretary position and that she arranged with the Chief of Staff, Mr. Arntson, to be released for the reason that her position was eliminated due to reorganization (IF p 364; TR pp 215-216).

Ms. Belisle contends that Ms. Cruz contacted her on about July 15, 2007, and asked about the status of her employment. They met for lunch on Friday, July 20, 2007, and she sent her resume to Ms. Cruz the following day. On Monday, July 23, 2007, Ms. Cruz asked her to return to SIGIR as the Director of Public Affairs, and she began work on Tuesday as a contractor with BCPI earning $70,000 or $80,000 a year. Ms. Belisle states that she accepted the position once Ms. Cruz assured that the Complainant would not be working at the Agency. Ms. Belisle asserts she learned afterward that the Complainant was no longer at SIGIR because the Public Affairs section had downsized (TR pp 212, 218, 220-222, 226).

Ms. Belisle testifies that she first met Ms. Cruz in September 2005, when she (Ms. Belisle) began her employment with the Agency. Ms. Belisle states that she and Ms. Cruz have a good relationship with each other, and on rare occasions they have met for social events outside of the office (TR pp 227, 229).

Ms. Belisle testifies that she was converted from her contractor position to her current federal civil service position in August 2007, where she earns a salary of $125,000 a year. She states that she has no administrative support and is the only person performing public affairs activities (TR pp 211-212, 230).

16

Burgess, ARHQOSA07AUG03041



**Investigator's analysis:**

**Issue of harassment (hostile work environment):**

The Complainant has membership in the protected groups of race (Black), national origin (African American), and sex (female) (IF p 143; TR p 11).

The Complainant was subjected to unwelcome conduct that a reasonable person would find offensive. Not all of the Complainant's claims describe actions that a reasonable person would find offensive; however, those that would be considered offensive include:

- Ms. Cruz taking over the Complainant's assignment to compile quarterly report recommendations from the staff in or about May 2007 (TR pp 24-25, 39, 68-69).
- Ms. Cruz reviewing the Complainant's time and attendance cards from June 2007, through July 2007, in order to determine if she was taking too much time off for personal reasons and medical appointments (IF pp 409-410).
- Ms. Cruz isolating the Complainant from the consultative process regarding media activities by excluding her from meetings with Mr. Bowen (IF p 410).
- Advising the Complainant on July 23, 2007, that her employment would be terminated (IF p 314).

The actions noted above are sufficiently severe as to create an intimidating work environment. The actions that led to the Complainant's termination caused the Complainant to suspect that Ms. Cruz's actions were part of a process of working against her toward the goal of creating a case for the Complainant's termination (TR pp 29-30, 35-37).



The Complainant testified that the fact that the Agency eliminated the only two people in her section, both of whom are Black/African American, and replaced them with a White person, Ms. Belisle, is an indication that race and national origin were involved in the reorganization and Ms. Cruz's subsequent termination of the Complainant and Ms. Redmon. Additionally, a similar section, Congressional Affairs, was also reorganized but the effected White employees were able to transfer to other positions within the Agency. No witness testified as to sex being a factor in the alleged claims. All witnesses other than the Complainant, to include Ms. Redmon, testified that they did not believe race or national origin were the reasons for the Agency's actions. Mr. Arntson testified that the Complainant's termination may have been associated with the Complainant's treatment of Ms. Cruz's friend, Ms. Belisle (IF pp 409, 411-412; TR pp 40-42, 44-45, 47, 52-56, 79, 181-182, 185).

The alleged harasser is Ms. Cruz, whom the Complainant testified as initiating nearly all of the alleged acts of harassment. The Complainant asserted that Mr. Bowen was also involved, because as the senior person in the Agency, he would have approved the actions that Ms. Cruz executed. Both Mr. Bowen and Ms. Cruz are within the Complainant's chain of command (IF p 126; TR pp 32-33).



17

Management contends that it did not harass the Complainant, so it did not believe that there was harassing behavior that it needed to address. The Agency submitted copies of its policies on EEO and harassment from the Department of the Army. The Agency provided a copy of its own policy statement on EEO, which also addresses harassment. That document is signed by Mr. Bowen but is not dated (IF pp 324-331, 399, 403).

When asked if she reported the harassment she alleges to anyone prior to her termination, the Complainant stated that she did not because she had hoped that she could tolerate the harassment. The Complainant also stated that she wanted to retain her job, thus indicating that she believed that by reporting the harassment her continued employment would be jeopardized (TR pp 55-56).

**Issue of retaliation:**

The Complainant testified that she expressed to Ms. Cruz on July 20, 2007, that she believed Ms. Cruz's decision to terminate Ms. Redmon's employment was racially motivated and discriminatory. The Complainant also sent an email message on the morning of July 23, 2007, in which she expressed that she had concerns about the fairness and equality of the termination of Ms. Redmon (IF p 301; TR pp 12-13, 34-35).

Ms. Cruz testified that the Complainant complained to her of Ms. Redmon's termination both verbally and by email message, but she did not consider either complaint to be an allegation of discrimination based on race or national origin. Management was aware of the Complainant's protected EEO complaint, namely the email message in which she expressed concern over the fairness and equality of Ms. Redmon's termination, because the Complainant sent it to senior members of management, to include Mr. Bowen, Ms. Cruz, Mr. Arntson, and Ms. Nisbet, on the morning of July 23, 2007, at 9:04 a.m. (IF pp 140, 301; TR pp 12-13, 34-35, 113-116, 121, 128, 143-145, 150, 152, 157, 160, 163-164).

Management's action of terminating the Complainant would be considered as materially adverse to a reasonable employee. Such termination would likely deter a reasonable employee from filing or supporting a complaint of discrimination.

The Complainant's notification of her termination occurred at about 3:00 p.m. on July 23, 2007. The Complainant had distributed the email message of her concern for fairness and equality earlier that morning. The Complainant had also verbally complained to Ms. Cruz about Ms. Redmon's termination about four days earlier. Ms. Cowart was similarly situated to the Complainant in that Ms. Cowart was also the Assistant IG for a section within the Agency (Congressional Affairs). There is no evidence supporting that Ms. Cowart had any previous protected EEO activity. The Agency removed both the Complainant and Ms. Cowart from their Assistant IG positions; however, the Agency allowed Ms. Cowart to transfer to another position. The Agency did not allow the Complainant to transfer to another position within the Agency. According to Ms. Cruz, the Complainant could not so transfer because there was no other position for which she was qualified (IF pp 125, 134, 311-313; TR pp 29-30, 35-37, 89-90).

Management has articulated legitimate, non-retaliatory reasons for its treatment of the Complainant and Ms. Cowart. Management witnesses testified that OMB had placed pressure on SIGIR to reduce costs. Since the Public Affairs section had in the past operated with only one person, Ms. Cruz believed that section was one area in which the Agency could reduce the number of positions. Management testimony and Ms. Cruz's notes reveal that the Agency began planning reorganization as early as June 2007, which was prior to Ms. Redmon's termination, and prior to the Complainant subsequently complaining about Ms. Redmon's termination verbally on July 19, 2007, and via email message on July 23, 2007. Mr. Cruz states that Ms. Cowart was able to transfer to another position because she was qualified for that position. However, the Complainant was not offered the opportunity to transfer because she was not qualified for another position within the Agency (IF pp 376, 400, 402-403; TR pp 89-97, 193-195).

The reasons that the Agency has given for its actions are credible in that several management witnesses, Ms. Cruz, Mr. Bowen, and Ms. Nisbet, testified that reorganization was indeed occurring in June and July 2007. Also, copies of meeting notes from Ms. Cruz's notebook disclose that as early as June 2007, she was discussing reorganization of the Agency with Mr. Bowen. Mr. Arntson declared that on July 23, 2007, Ms. Cruz informed him that the Complainant had sent her an email message in which the Complainant stated that she could not attend a meeting that she and Ms. Cruz had previously scheduled for that day. This indicates that Ms. Cruz had already scheduled a meeting to terminate the Complainant prior to July 23, 2007. In other words, Ms. Cruz had decided to terminate the Complainant before she received the Complainant's email message on the morning of July 23, 2007, in which she complained of fairness and equality. Mr. Arntson's testimony dissents from that of the majority of witnesses regarding the Complainant's termination. He declared that the Complainant's treatment of Ms. Belisle was a factor in the Complainant's termination because Ms. Cruz and Ms. Belisle were friends (IF pp 301, 376, 400, 402-404, 411-412; TR pp 92-97, 121, 193, 195).

**Issue of disparate treatment:**

The Complainant's memberships in the protected groups of race, national origin, sex, and having prior EEO activity were previously addressed (IF pp 140, 143, 301; TR pp 11-13, 34-35, 113-116, 121, 128, 143-145, 150, 152, 157, 160, 163-164).

Ms. Cowart was similarly situated to the Complainant in that both were Assistant IGs who supervised their respective sections; Ms. Cowart over Congressional Affairs, and the Complainant over Public Affairs (IF p 125).

The Agency treated the Complainant differently than it did Ms. Cowart who is outside of the Complainant's protected group of race, national origin, and EEO activity in that Ms. Cowart is White, American, and has no known prior EEO activity. Even though both lost their assigned positions in the reorganization that occurred in July 2007, the Agency offered Ms. Cowart the opportunity to transfer to another position, that of Senior Advisor for Congressional Affairs. Ms. Cowart remained in that position until she left the Agency on September 8, 2007. Ms. Cruz's meeting notes reveal that she and Mr. Bowen considered reassigning Ms. Cowart to the position

of Senior Advisor for Congressional Affairs on about July 3, 2007, as they planned the Agency's reorganization. The Agency did not give the Complainant the opportunity to transfer within SIGIR (IF pp 133, 140, 379; TR pp 52-55, 79).

The Complainant and Mr. Arntson testified that Ms. Cruz terminated the Complainant and Ms. Redmon, both Black and African American, who were the only members of the Public Affairs section, yet Ms. Cruz offered other positions to the members of the Congressional Affairs section who were predominantly White (IF pp 409, 412; TR pp 29-30, 35-37, 40-42).

The fact that management has articulated legitimate, nondiscriminatory reasons for its treatment of the Complainant and Ms. Cowart was previously addressed (IF pp 376, 400, 402-403; TR pp 89-97, 193-195).

The fact that management's reasons for its actions are credible were previously discussed (IF pp 301, 376, 400, 402-404, 411-412; TR pp 92-97, 121, 193, 195).

Ms. Cruz testified that the Agency reassigned Ms. Cowart to another position, but did not do the same for the Complainant because she did not qualify for an available position. Review of the Agency's SIGIR Staffing Table 30 documents shows that after the reorganization, the Agency reassigned Ms. Cowart to the position of Senior Advisor for Congressional Affairs, which was in the Congressional Affairs section. Review of the Table 30 documents from January 2007, through November 2007, reveals that the position of Senior Advisor for Congressional Affairs did not exist prior to the reorganization, and no longer existed as a vacant position after Ms. Cowart departed the Agency on September 8, 2007. This analysis of the documentation indicates that the Agency created the Senior Advisor for Congressional Affairs position for Ms. Cowart to fill following the reorganization. No information indicates that the Agency created a position for the Complainant following the reorganization. Ms. Cruz testified that after the Complainant's termination, the Agency could not allow her to temporarily remain working in Public Affairs since the Agency could not have an understandably unhappy, terminated employee represent SIGIR and speak with the media. The Agency filled the newly created position of Director of Public Affairs with the recently hired Ms. Belisle who is Caucasian, American, and has no known previous EEO activity (IF pp 129-136; TR pp 153-154, 156, 211).

*Martin J. Welker*

Martin J. Welker
Investigator

20