# Exhibit 10



# SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION

October 5, 2007

MEMORANDUM FOR OFFICE OF MANAGEMENT AND BUDGET
ATTN: HOWARD DICKENSON

SUBJECT: Follow-up Responses to October 4, 2007 E-mail

New Question #1

Since January 2004, SIGIR has spent a cumulative $1.8 million on the Capping Lessons Learned effort – this represents 1.3% of our total appropriation. Work to date has produced Lessons Learned reports on three issues: Human Resources Management, Contracting and Program/Project Management. These lessons learned reports have resulted in policy improvements by DOS and DOD, publication of contingency contracting guidance from the Office of Federal Procurement Policy, and proposed Legislation by Senator Collins on contracting improvements. Work on the Capping Lessons Learned Report is being performed to meet our mandated requirement to provide "recommendations on policies designed to promote economy, efficiency and effectiveness" (PL 108-106 (a) (2) (A)) A final lessons learned report is expected to be issued in mid-2008. There are no current plans to continue the effort beyond that time.

New Question #2

Please see discussion of Follow-Up Question #7.

Follow-up to Question #1

SIGIR currently has 98 FTEs with offer packets out to 5 individuals. Our current manning document (Table 30) contains 123 authorized positions with several programmed to be phased out. As we planned for FY09, we anticipated a reduction in staffing as the Lessons Learned Initiative will have concluded and the funding sources over which SIGIR has jurisdiction diminishes. The projected manning for FY09, based on existing mandates, currently has 104 positions, a reduction in 19 positions.

Current organizational structure is pictured below. Please note that SIGIR has scheduled a strategic planning session for mid-October at which time we will reevaluate the current structure with an eye toward streamlining non-operational AIG positions (Audits, Inspections and Investigations being the operational elements). One such change has already been made with the elimination of the AIG for Public Affairs. A few more are anticipated.

111

400 Army Navy Drive • Arlington, Virginia  22202



Staff breakout according to our current manning document (Table 30) based on 123 FTEs and on 104 FTEs:

| Unit/Team | Current | Planned FY09[1] |
|---|---|---|
| Office of Inspector General | 6 | 5 |
| Management & Administration | 18 | 16 |
| General Counsel | 3 | 2 |
| Congressional/Public Affairs | 4 | 3 |
| Audits | 43 | 39 |
| Investigations | 23 | 21 |
| Inspections | 12 | 10 |
| Information & Knowledge Management | 14 | 8 |
| TOTAL | 123 | 104 |

[1] Based on existing mandates

The current breakdown is 42 positions in Baghdad, the remainder in DC. For FY'09 we plan to retain 42 in Baghdad. Of the 42 Baghdad positions, the breakout is as follows:

| | |
|---|---|
| Audits | 24 |
| Inspections | 7 |
| Investigations | 6 |
| Management/Admin | 5 |

As for the size of our Washington staff, there are several factors that control the size of the Washington staff:

112

- In light of our cross-jurisdictional mandate which requires oversight of $32 billion spread among several entities of the Department of Defense (including Gulf Regional Division, U.S. Army Corps of Engineers; Multi-National Force – Iraq; Multi-National Command – Iraq; Multi-National Security Transition Command – Iraq), the Department of State (International Narcotics and Law Enforcement; U.S. Mission – Iraq; Iraq Transition Assistance Office; Office of Provincial Affairs) and the U.S. Agency for International Development – and in light of the unique and highly demanding requirement for Quarterly Reports (600+ pages of data gathered, analyzed and produced every 3 months) as well as our high level of audit, inspection and investigation output (nearly 200 audits and inspections over the past 3 years – a total of over 12,000 pages of unique product), our staff is relatively lean. We make up for numbers with the high quality of staff, and given the challenges in finding enough qualified staff, we sometimes compensate for staff shortages by allowing staff to work overtime. For example, we have 5 inspectors in Baghdad that produce an average of 8 inspections every 3 months. These are complex reports of over 30 pages in length, produced under PCIE blue book regulations.

- Our DC staff is larger than our Baghdad staff because we ensure that our footprint in Baghdad is comprised only of personnel that are required to be in-country (reinforced by NSDD-38 limitations). Due to the security situation, we do not locate individuals in Baghdad unless there is a mission requirement. 37 of our 42 staff assigned there are auditors, inspectors or investigators. The remaining staff gathers information and data for our Quarterly Reports and maintains close communication with all of our key stakeholders in Baghdad. All of the editors, writers, Quarterly Report production staff, administration, Counsel, Congressional, Public Affairs – are maintained in DC. The cost is lower (no requirement to pay the 70% post differential and hazard pay), and we keep the risk down to only those employees considered essential for mission requirements. Additionally, in the case of investigations, we have a significant number of cases in which leads and suspects are in CONUS, as such our investigative footprint is larger in DC. So too are our auditors spread out so that records and management of Iraq reconstruction programs retained in CONUS are covered by DC based staff.

- On the issue of contracted support from D&T, SIGIR previously spent $7 million annually on contracted support. We have actively worked to reduce our contracted work and utilize government employees instead. As a result, we have reduced our overall contract costs for that, our largest contract, by 40%. We have requested $4.6 million for D&T support for FY'09.

Follow-up to Question #3

SIGIR's compensation is marginally higher than other organizations for two principal reasons. First, SIGIR hires under 5 USC 3161 which requires us to pay individuals at a rate commensurate with their pay in their most recent job, but not higher than GS15/10 with the exception of the 10 senior staff identified on the organizational chart above (they are hired at SES equivalent rate of $144,000 which will be discussed in a moment). Because SIGIR hires

113

3

staff that is more senior, and thus able to produce high quality work without extensive supervision – many of our staff come into the job with recent salaries that are well above $100-$150K per year. While 5 USC 3161 requires us to match previous salaries, it also can unfairly penalize individuals who are hired to perform jobs with position descriptions that require a level of skill that may not have been reflected in a low private sector salary in previous jobs. In those cases, SIGIR develops a position description and works with the Army to slot it to the GS scale. We then recruit against it and qualified candidates are hired at the appropriate GS rate.

We are a flat organization, we hire many recent retirees, who can hit the ground running and produce high quality audits, inspections and investigations without many layers of management. This has proven to be a highly efficient model and has resulted in good quality output.

Our hiring policies are well established and have been vetted by DOD and the Secretary of the Army, as the Army is the Executive Agent for SIGIR hiring. All hiring packets, in addition to passing SIGIR scrutiny, have to also pass Army scrutiny prior to final approval. I have attached a memorandum that describes our hiring policy and the MOU that describes the Army's role in reviewing SIGIR administrative actions. While SIGIR does set its own policies, these policies are bounded by DOD policies within which all actions are taken.

In the case of SES-equivalent positions, only senior staff (again, the 10 positions identified on the organizational chart above) are considered SES-equivalent. The determination of the rate of pay for these individuals was made by the Inspector General in 2004 and has remained consistent. PL 108-106 caps the IG's salary at level IV of the Executive Schedule – which is $145,000. Many staff within each directorate are paid (due to the 5 USC 3161 construct) at the GS 15/10 level which is $143,000+. Thus, it was determined that a fair compensation for the senior management of the organization had to be below that of the IG but above that of their subordinates. That left $144,000, which is what they are paid.

Follow-up Question #5

It varies from pay period to pay period. There are certain positions that require overtime during cycles. Generally there are about 10 individuals in a pay period that will receive overtime. In the case of the Quarterly Report cycle, the highly demanding requirements will cause staff to work extensive overtime for the week or two prior to publication. There are also heavy requirements to produce audits in a short time frame and requiring staff to pull extra shifts to get the work done. SIGIR is constantly working to reduce Washington DC based overtime. Improved management of processes, and hiring of personnel to cover work overload are two ways in which that is being addressed.

Follow-up Question #7

SIGIR has been operating under a formal strategic plan for audits originally covering fiscal years 2005 – 2007. Given the uncertainty over extension of SIGIR's tenure beyond 2008, we have continued to operate within the framework of that strategic plan with periodic tactical plan updates to carry us through fiscal year 2008. Under our present mandate, SIGIR's audit plans for FY08 identify 35 audits that we plan to complete by the end of the FY – 16 focused financial reviews including a capping report, 7 financial and program reviews of the reconstruction

114

4

sectors, 4 audits of non-construction programs (democracy building, jobs programs, etc.) and 8 audits of projects and activities funded by the Iraq Security Forces Fund (ISFF) and the Economic Support Fund (ESF).

To identify specific audits planned for FY 09 requires a clearer understanding of our authority and jurisdiction and discussions with other Inspectors General with whom we coordinate our work in Iraq. At present, no laws have been passed extending SIGIR's lifespan or amending our authority. While our best estimate of future plans at this point envisions that the predominate funding streams from FY 08 forward will be the ISFF and ESF, bills have passed the Senate to include the Army's Logistics Civil Augmentation Program (LOGCAP) in our jurisdiction. We are poised to respond to legislative changes. Assuming existing legislative uncertainties regarding SIGIR's tenure and scope of its mission are resolved in favor of an extension and potential expansion of its mission, we will move to prepare a new multi-year strategic plan—but to firm up a detailed audit plan for FY 09 at this time would be premature. No audit resources are currently dedicated to the Lessons Learned Capping Report – that is a task led by the Knowledge Management Directorate which draws from the audits produced by the Audit directorate to develop the overall findings and recommendations that will be provided to DOD, DOS and the Congress.

Follow-up Question #8

No significant changes are anticipated in SIGIR's Investigative Staffing from '08 to '09 due to the fact that we are planning to increase efforts in those years to team with and transition cases to the Joint Operations Center which includes investigative resources from the DOD-IG (DCIS), Army CID, FBI and other members of our joint investigative task forces.

Follow-up Question #9

The salary increase estimate of 7% is based on two factors. There is a 2.5% COLA that is standard for all federal agencies and applies to all employees across the board. In addition, employees receive performance evaluations upon their yearly anniversary that result in a one-step (good performance) or two-step (outstanding performance) salary increase. We have averaged the one- and two-step increases to 5%, added it to the 2.5% COLA to arrive at the 7% figure.

Follow-up Question #14

SIGIR currently has 51 ongoing investigations. 23 of those are with the Department of Justice for prosecution and SIGIR is providing ongoing support for the processing of those cases. Of the 51 cases, the majority of the crimes involve Fraud (22 cases) and Bribery (15 cases).

Follow-up Question #15

SIGIR only rents space in Virginia. A decision in Summer '07 to expand to two locations in Crystal City is being reviewed and will likely be reversed. SIGIR plans to maintain one office in Arlington, VA unless our mandate and funding is significantly changed.



115

Thank you for the opportunity to clarify these issues. If you have any other questions, I can be reached at (703) 428-1044 or at ginger.cruz@sigir.mil.

Respectfully,

Ginger Cruz
Deputy Inspector General

116

```
                 RE Questions for SIGIR on budget request 4(UNCLASSIFIED).txt
From: Olson, Rick Mr SIGIR
Sent: Friday, October 05, 2007 12:28 PM
To: 'Dickenson, Howard E.'
Cc: Fields, Linda M Ms SIGIR; Young, Erica Ms SIGIR; Weinberg, Hillel Mr
SIGIR; Cruz, Ginger M Ms SIGIR; Nevarez, Vondena Ms SIGIR
Subject: RE: Questions for SIGIR on budget request (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE
```

Thanks Howard. You know we take these seriously; we both have important jobs to do...

I discussed this with Ginger and Stuart last night, and the decision was for Ginger to give you a call. She has relayed the information needs that are still outstanding and we are collecting those now-- you should have our feedback by the end of the day.

Let me know if you need anything else.

Best regards, Rick.

-----Original Message-----
From: Dickenson, Howard E. [mailto:Howard_E._Dickenson@omb.eop.gov]
Sent: Thursday, October 04, 2007 10:29 AM
To: Olson, Rick Mr SIGIR
Cc: Fields, Linda M Ms SIGIR; Young, Erica Ms SIGIR; Weinberg, Hillel Mr SIGIR
Subject: RE: Questions for SIGIR on budget request (UNCLASSIFIED)

Rick, thanks. We are in a "time-crunch" on making our funding recommendations and I will need the answers to the two questions below very quickly. These may be the two most important questions. I understand that SIGIR does not yet have an audit plan for FY 2009. As such, I need a better understanding of how SIGIR plans on conducting audits and where funds will be allocated.

Again, I would appreciate information by COB tomorrow.

***

With respect to the answers to the questions I sent earlier, I looked over the answers last night and I am concerned that many of the questions either were not answered or were incomplete. OMB takes the budget process seriously. I would hope that SIGIR does as well. The types of questions I asked are "standard/basic" questions that all agencies are asked.

The most important questions left unanswered from last week's hearing are the two questions you are currently working on.

With respect to the other questions:

(1) On question #1, the SIGIR-provided chart shows total FTEs of 123.
Is this the case? If so, this number is different than what SIGIR has been providing in its budget justifications.

(2) On question #2, I do not believe this was fully addressed in the verbal hearing. I would appreciate a written explanation for a staff so large, particularly such a large Washington-based staff. It would also be helpful if this answer is put in the context of SIGIR's contract with Deloitte (which effectively also adds staff to SIGIR's audit/research).

(3) On question #3, I did not ask for a chart on total payroll expenses, but instead a histogram on average compensation (pro-rated by year -- see question #3 below

Page 1

*117*

RE Questions for SIGIR on budget request 4(UNCLASSIFIED).txt
again). SIGIR's compensation, particularly for the Washington staff, seems high as it is equal to an SES level (separately, it is higher than a GS 14, step 10 as claimed in the hearing). SIGIR needs to do a much better job explaining this salary structure. While SIGIR is given "flexibility" to set salaries outside of the GS scale, SIGIR also needs to explain how salaries are structured. Again, OMB is not going to weigh-in on how SIGIR should pay its employees, but OMB does have a responsibility to understand pay structures at all federal entities.

(4) On question #4, thanks for the helpful information.

(5) On question #5, I just want to make sure I am reading the answer correctly. According to the information provided, the average Washington-based FTE was paid $864 per pay period for overtime? Is this ALL Washington-based FTEs, a subset, or something else? At first glance,
$864 in overtime pay per payperiod for (all?) Washington-based FTE seems high.

(6) On question #6, thanks for the helpful information.

(7) On question #7, this was definitely NOT addressed during the budget hearing and is currently perhaps the most outstanding questions that we would like to better understand. OMB needs to understand SIGIR's conceptual plans for future audits, particularly the forensic audit. To be very clear, OMB is not weighing-in on what types of audits SIGIR should perform; nor are we defining forensic audits. That said, OMB does need to better understand how SIGIR plans on using taxpayer money.

(8) On question #8, the answer suggests that no additional resources are requested for investigations. Does this mean that the amount to be spent on investigations will be the same in FY 2009 as anticipated in FY 2008?

(9) On question #9, I am not convinced that this was fully explained or justified in the hearing. It would still be helpful if SIGIR could provide a better justification for the increase in salary. SIGIR argued that it has a very senior staff and that they deserved a higher pay increase than the rest of the government. We would still be interested in understanding why: (a) SIGIR believes their staff is senior compared to others and (b) why they deserve such a large increase compared to everyone else.

(10) On question #10, thanks for the helpful information.

(11) On question #11, thanks for the helpful information.

(12) On question #12, thanks for the helpful information.

(13) On question #13, thanks for the helpful information.

(14) On question #14, I do not believe this was addressed during the budget hearing. My understanding was that there was going to be a follow-up. That said, I also want to be very sensitive to any on-going investigations. I do not have a "need-to-know" details. However, it would be helpful to have a general sense of the state of SIGIR's investigations.

(15) On question #15, thanks for the helpful information (i.e. - catching the dollar limit on the requirement to complete the form). On a related note, does SIGIR rent any space besides in Virginia? If so, where does SIGIR rent space? One of the reasons I originally asked the question about completing the form was because I was interested in knowing if SIGIR is either currently, or plans to, rent space outside of Virginia.

Again, thanks for all of your help. Cheers.

Howard Dickenson

```
                RE Questions for SIGIR on budget request 4(UNCLASSIFIED).txt
Office of Management and Budget
International Affairs Division
202.395.3554 (tel)   202.395.5770 (fax)

-----Original Message-----
From: Olson, Rick Mr SIGIR [mailto:rick.olson@sigir.mil]
Sent: Wednesday, October 03, 2007 5:17 PM
To: Dickenson, Howard E.
Cc: Fields, Linda M Ms SIGIR; Young, Erica Ms SIGIR; Weinberg, Hillel Mr SIGIR
Subject: RE: Questions for SIGIR on budget request (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Hi Howard!  I will take these on-- don't have the data right at hand, but we'll get
it.  Best, Rick.

-----Original Message-----
From: Dickenson, Howard E. [mailto:Howard_E._Dickenson@omb.eop.gov]
Sent: Wednesday, October 03, 2007 9:58 AM
To: Olson, Rick Mr SIGIR
Cc: Fields, Linda M Ms SIGIR; Young, Erica Ms SIGIR; Weinberg, Hillel Mr SIGIR
Subject: RE: Questions for SIGIR on budget request

Hi Rick,
```

I hope things are going well.  I just wanted to follow-up on the questions below and see when SIGIR will be able to provide answers to the questions I sent last week.  I also recall that I had some questions during the hearing.  Unfortunately, I don't have my notes in front of me, but I believe the questions were:

(1) Please describe how much has been spent to date on the "capping" audit?

(2) In FY 2008 and FY 2009, how much does SIGIR anticipate spending on program audits of current activities; reviewing the effectiveness of completed projects (including the capping audit); forensic audits; and the quarterly reports.

Any assistance would be greatly appreciated.  Please let me know when SIGIR will be able to provide answers.  Cheers.

Howard Dickenson

Office of Management and Budget

International Affairs Division

202.395.3554 (tel)   202.395.5770 (fax)

---

```
                RE Questions for SIGIR on budget request 4(UNCLASSIFIED).txt
From: Dickenson, Howard E.
Sent: Wednesday, September 26, 2007 10:41 AM
To: 'Young, Erica MS SIGIR'
Cc: 'Fields, Linda M Ms SIGIR'
Subject: Questions for SIGIR on budget request
```

Ok - bad Howard for not sending you questions earlier. I suspect that we will need to follow-up on some of this information. Hope to see you soon.

Cheers.

Howard


\*\*\*


For today's verbal discussion, I would be very interested in learning more about SIGIR's anticipated audit plans for FY 2009, particularly as related to the forensic audit requirement.


Additional questions:


(1) Please provide SIGIR's current organizational structure, including how many individuals work in each unit/team and where these individuals are physically located.


(2) Why does SIGIR believe it needs such a large staff in Washington? Aren't assistance programs winding-down?


(3) Please provide a histogram on SIGIR's annualized per employee "compensation" for FY 2007 - including base salary, bonuses, any relocation benefits, and deferred income paid to the employee in FY 2007, or deferred income that will be paid to the employee in a future
year. Please exclude any political appointees from the analysis (i.e. - exclude Stuart). The histogram should include all SIGIR FTEs in FY 2007 with their annualized compensation.


(4) What is SIGIR's current overtime policy? Please provide a written description of SIGIR's current overtime policy and any changes that have been made to that

RE Questions for SIGIR on budget request 4(UNCLASSIFIED).txt
policy in the past 12 months (and when those changes took place).


(5) What is the total amount of overtime compensation paid to Washington staff in FY 2007? What is the average overtime compensation paid to Washington-based FTEs? The same questions for those working in Baghdad.


(6) Please provide a written description of SIGIR's bonus policy (i.e. - how does SIGIR determine who is to receive bonuses).


(7) What are SIGIR's FY 2009 plans to comply with a Congressionally-mandated forensic audit requirement? The SIGIR budget justification materials are silent on this topic.


(8) The budget justification documents note that SIGIR wants funding to support expanding its infrastructure to support investigations. It would be helpful if SIGIR could be more explicit on what they are trying to procure.


(9) The justification documents suggest that SIGIR anticipates average base salaries to increase by 7 percent in FY 2009. Why such a high increase? This is more than double what every federal agency will have in FY 2009.


(10) Does the SIGIR budget summary chart show obligations or disbursements?


(11) Are the fringe benefits that SIGIR pays to all employees the same as the standard government package or are there differences?


(12) Please explain SIGIR's policy for deciding when employees fly coach, business class, or first class.


(13) Why does SIGIR pay for a fitness program? What other non-traditional benefits does SIGIR pay for (i.e. - coffee in the morning, etc....)


(14) (verbal discussion only): Please provide information on SIGIR's current investigations of fraud and corruption. I will explain more verbally.


(15) Please complete a space justification form (see links below).
This is required in all budget justifications to OMB.


http://www.whitehouse.gov/omb/circulars/a11/current_year/s54.pdf

Page 5


121

RE Questions for SIGIR on budget request 4(UNCLASSIFIED).txt
http://www.gsa.gov/exhibit54


Howard Dickenson

Office of Management and Budget

International Affairs Division

202.395.3554 (tel)   202.395.5770 (fax)


Classification:   UNCLASSIFIED
Caveats: NONE

Classification:   UNCLASSIFIED
Caveats: NONE

# HR

No Information,
Ms. Redmon was Contract employee

123