Exhibit 11

| EEO COUNSELOR'S REPORT | 1. DA DOCKET NUMBER |
|---|---|
| For use of this form see AR 690-600, the proponent agency is OSA. | ARHQOSA07AUG03041 |

**PRIVACY ACT STATEMENT (5 U.S.C. §552a)**

| | |
|---|---|
| AUTHORITY: | Public Law 92-261 |
| PRINCIPAL PURPOSE: | Used for processing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical and/or mental disability, or reprisal by Department of the Army civilian employees, former employees, applicants for employment and some contract employees. |
| ROUTINE USES: | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (White House, Congress, Equal Employment Opportunity Commission) regarding the status of a complaint or appeal; or (d) to adjudicate complaint or appeal. |
| DISCLOSURE: | Voluntary, however, failure to complete all appropriate portions of this form may lead to delay in processing and/or rejection of complaint on the basis of inadequate data on which to continue processing. |

**SECTION I - PRE-COMPLAINT INTAKE INTERVIEW**

| 2. NAME OF AGGRIEVED (Print-Last, First, Middle Initial) | | 3. SSN | 4. JOB TITLE |
|---|---|---|---|
| BURGESS, Denise N. | | ▮▮▮▮ | Former Asst. Inspector General for Public Affairs |

| 5. PAY PLAN/SERIES/ GRADE | 6. DUTY ORGANIZATION (Complete address including office symbol) |
|---|---|
| SES-4/AD/301/00 | Special Inspector General for Iraq Reconstruction<br>2011 Crystal Drive<br>Arlington, Virginia 22202 |

| 7. WORK TELEPHONE | 8. HOME TELEPHONE | 9. HOME ADDRESS |
|---|---|---|
| N-A | (404) 790-7900 | ▮▮▮▮▮▮ |

| 10. DATE OF ALLEGED DISCRIMINATORY ACTION (YYYYMMDD) | 11. 45TH CALENDAR DAY AFTER EVENT (YYYYMMDD) | 12. REASON FOR DELAYED CONTACT BEYOND 45 DAYS, IF APPLICABLE |
|---|---|---|
| 20070401 | N-A | N-A |

| 13. DATE OF INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 14. 30TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 15. 90TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 16. DATE COUNSELING EXTENSION GRANTED, IF APPLICABLE (YYYYMMDD) |
|---|---|---|---|
| 20070813 | N-A | N-A | N-A |

| 17. DATE PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED (YYYYMMDD) | 18. PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED: |
|---|---|
| 20070813 | ☐ Telephonically  ☒ In-Person  ☐ Other (facsimile/e-mail |

**SECTION II - ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED** (Complete address including office symbol)

Office of the Special Inspector General for Iraq Reconstruction (SIGIR)
2011 Crystal Drive
Arlington, Virginia 22202

**SECTION III - RESPONDING MANAGEMENT OFFICIAL(s) INFORMATION** (Include name, complete work address and phone number if known.)

Mr. Stuart Bowen, Special Inspector General
2011 Crystal Drive
Arlington, VA 22202
(703) 428-1044

Ms. Ginger Cruz, Deputy Inspector General
2011 Crystal Drive
Arlington, VA 22202
(703) 428-1044

DA FORM 7510, FEB 2004

15

**SECTION IV - BASIS OF COMPLAINT** *(Identify specific race, color, religion, national origin, disability, age, sex, or reprisal if alleged.)*

☒ RACE Black _____ ☐ COLOR _____ SEX ☐ Male ☒ Female

☒ AGE 46 _____ DATE OF BIRTH ▊▊▊▊▊ · . ☒ NATIONAL ORIGIN African American

☐ RELIGION _____ DISABILITY ☐ Mental _____ ☐ Physical _____

☐ REPRISAL _____

*(Date(s) of prior EEO activity)*

**SECTION V - MATTER(s) GIVING RISE TO COMPLAINT** *(Specify who, what, where, and when.) (Use additional sheet of paper if necessary.)*

Ms. Denise Burgess, (Former Inspector General for Public Afairs)
2000 South Eads Street
# 911
Arlington, Virginia 22202
(404) 790-7900

Ms. Denise Burgess alleges that she was subject to a hostile work environment due to harassment based on her race (Black), sex (Female), age (DOB: 9/13/61) and National Origin (African American). In support of her claim of hostile work environment she stated the following actions:

a. From March 2007 through July 2007, Ms. Burgess alleges that Ms. Kristine Belisle her former SIGIR Deputy challenged her authority.

b. In May 2007, Ms. Burgess alleges that Ms. Kristine Belisle attempted to hijack her work assignments.

c. From May 2007 through July 2007, Ms. Burgess alleges Ms. Ginger Cruz targeted her and her staff for termination when an equivalent unit, had four full-time staff and was slated for no reductions.

d. From June 2007 through July 2007, Ms. Burgess alleges that Ms. Ginger Cruz delayed hiring staff into her section, forcing her to accomplish the work previously done by two full-time individuals.

e. From June 2007 through July 2007, Ms. Burgess alleges that Ms. Ginger Cruz, Deputy Inspector General for Iraq Reconstruction exclusively reviewed her time and attendance records in hopes of finding irregularities.

f. In July 2007, Ms. Burgess alleges that Ms. Ginger Cruz, isolated her from the consultative process regarding media activities.

g. In July 2007, Ms. Burgess alleges Ms. Ginger Cruz insisted on addressing one of her staff members by an in-proper name.

h. On July 23, 2007, Ms. Burgess received a memorandum from Mr. R.G. "Nick" Arnston, Chief of Staff for the Special Inspector General for Iraq Reconstruction (SIGIR) informing her that effective September 1, 2007, her employment with the SIGIR agency would be terminated.

A mediation session was held on October 4, 2007, with Ms. Burgess, and the SIGIR management officials however, the mediation session was unsuccessful. Ms. Burgess acknowledged receipt of her Notice of Right to File a Formal EEO Complaint on October 24, 2007.

**SECTION VI - RELIEF SOUGHT**

- Compensatory Damages
- Employment and Salary (Prior Employment)

DA FORM 7510, FEB 2004

*16*

## SECTION VII - RIGHTS AND RESPONSIBILITIES

THE AGGRIEVED WAS PROVIDED WITH THE AGGRIEVED PERSON'S RIGHTS AND RESPONSIBILITIES NOTICE AND WAS SPECIFICALLY ADVISED OF THE FOLLOWING:

[ ] The basis(es) for filing pre-complaint, formal complaint, and/or class complaint, and of right to file a formal complaint of discrimination.

[X] The pre-complaint, formal and/or class complaint process.

[X] The 45-day calendar requirement from effective date of personnel action or of the date of the matter alleged to be discriminatory.

[X] The role of the EEO counselor, including that the counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral.

[X] The activity's Alternate Dispute Resolution (ADR) Program and right to elect either ADR (if offered) or traditional EEO counseling.

[X] The right to remain anonymous during the pre-complaint process.

[X] The right to representation throughout the complaint process.

[X] Responsibility of the aggrieved to notify the EEO office in writing of any change in address and/or phone number.

[X] Responsibility of the aggrieved to notify the EEO office in writing of non-attorney or attorney representation, including address and phone number.

[X] The possible election requirement between a negotiated grievance procedure, MSPB procedure and the EEO complaint process.

[X] The election options in age and wage-based discrimination complaints.

## SECTION VIII - ELECTION OF REPRESENTATION

[ ] ATTORNEY          [ ] NON-ATTORNEY          [ ] NON-REPRESENTATIVE

| NAME OF REPRESENTATIVE | ADDRESS |
|---|---|

| TELEPHONE NUMBER | FAX | E-MAIL |
|---|---|---|

## SECTION IX - ALTERNATE DISPUTE RESOLUTION (ADR)

[ ] Matter determined not appropriate for ADR

_____
(Aggrieved must sign and date)

[ ] Matter determined appropriate for ADR   SMD 8/13/07
_____
(EEO Officer must initial and date)

[X] Wishes to participate in ADR, if offered   SMD 8/13/07
_____
(EEO Officer must initial and date)

Date of written offer of ADR   9/17/2007

Date of Agreement to Participate in ADR   9/17/2007

Name of assigned ADR facilitator/mediator   Mr. Darryl Greene, ADR Specialist - DoD, IRD

Date ADR facilitator/mediator assigned   9/18/2007

**Result of ADR:**

[ ] ADR was successful. Negotiated settlement agreement, signed on _____ (YYYYMMDD), is

[X] ADR was not successful. The aggrieved was issued a Notice of Right to File a Formal Complaint of Discrimination on 20071019 (YYYYMMDD) and notified of requirement to file a formal complaint within **15 calendar days** after receipt of Notice of Right to File. The aggrieved was provided a DA Form 2590, Formal Complaint of Discrimination.

## SECTION X - TRADITIONAL EEO COUNSELING (EEO official to complete only those which apply.)

[ ] Election of traditional counseling.

Name of assigned EEO counselor   _____

Date EEO counselor assigned   _____

[ ] Election to remain anonymous.

[ ] Election to waive right to remain anonymous.

[ ] Declined to pursue matter under Title VII.

17

## SECTION XI - WITNESS INQUIRY

a. Witness Information *(List all witness data here. Number sequentially and include name, title, organization, phone number, and relevant basis(es) information.)*

No witnesses were interviewed.

b. Witness Statements

DA FORM 7510, FEB 2004

*18*

**SECTION XI - WITNESS INQUIRY** *(Cont'd)*

Witness Statements *(Cont'd)*

c. Documents Reviewed *(List)*

d. Reviewed Documents Revealed

**SECTION XII - OUTCOME OF PRE-COMPLAINT INQUIRY**

☒ Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on ___20071019___ *(YYYYMMDD)* at which time I informed the aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken. I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination. The aggrieved is aware of the requirement to file a formal complaint within **15 calendar days** of the final interview if not satisfied with the results of my inquiry.

☐ Resolution was accomplished. Negotiated settlement agreement, signed on _____ *(YYYYMMDD)* is attached.

| PRINTED NAME OF EEO COUNSELOR | SIGNATURE OF EEO COUNSELOR |
|---|---|
| Stephanie M. Dawkins | *Stephanie M. Dawkins* |

Attachments:
1. Extension of counseling *(if applicable)*
2. Copies of reviewed documents

DATE SUBMITTED TO EEO OFFICER *(YYYYMMDD)*
20071019

DA FORM 7510, FEB 2004

PAGE 5 OF 5

*19*

| EEO COUNSELOR'S REPORT<br>For use of this form see AR 690-600, the proponent agency is OSA. | 1. DA DOCKET NUMBER<br>ARHQOSA07AU60304 |
|---|---|

### PRIVACY ACT STATEMENT (5 U.S.C. §552a)

**AUTHORITY:** Public Law 92-261

**PRINCIPAL PURPOSE:** Used for processing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical and/or mental disability, or reprisal by Department of the Army civilian employees, former employees, applicants for employment and some contract employees.

**ROUTINE USES:** Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (White House, Congress, Equal Employment Opportunity Commission) regarding the status of a complaint or appeal; or (d) to adjudicate complaint or appeal.

**DISCLOSURE:** Voluntary, however, failure to complete all appropriate portions of this form may lead to delay in processing and/or rejection of complaint on the basis of inadequate data on which to continue processing.

### SECTION I - PRE-COMPLAINT INTAKE INTERVIEW

| 2. NAME OF AGGRIEVED (Print-Last, First, Middle Initial)<br>BURGESS, DENISE N. | 3. SSN ▓▓▓▓ | 4. JOB TITLE FORMER:<br>ASSISTANT INSPECTOR GENERAL FOR PUBLIC AFFAIRS |
|---|---|---|

| 5. PAY PLAN/SERIES/GRADE<br>SES/4<br>AD/0301/00 | 6. DUTY ORGANIZATION (Complete address including office symbol)<br>FORMER:<br>SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION<br>2011 CRYSTAL DRIVE<br>CRYSTAL CITY, VA 22202 |
|---|---|

| 7. WORK TELEPHONE<br>N-A | 8. HOME TELEPHONE<br>404-790-7900 | 9. HOME ADDRESS ▓▓▓▓▓ |
|---|---|---|

| 10. DATE OF ALLEGED DISCRIMINATORY ACTION (YYYYMMDD)<br>4/07 – 7/07 | 11. 45TH CALENDAR DAY AFTER EVENT (YYYYMMDD) | 12. REASON FOR DELAYED CONTACT BEYOND 45 DAYS, IF APPLICABLE | |
|---|---|---|---|

| 13. DATE OF INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 14. 30TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 15. 90TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 16. DATE COUNSELING EXTENSION GRANTED, IF APPLICABLE (YYYYMMDD) |
|---|---|---|---|

| 17. DATE PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED (YYYYMMDD)<br>8/13/07 | 18. PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED:<br>☐ Telephonically  ☑ In-Person  ☐ Other (facsimile/e-mail) |
|---|---|

### SECTION II - ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED (Complete address including office symbol)

SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION (SIGIR)

### SECTION III - RESPONDING MANAGEMENT OFFICIAL(s) INFORMATION (Include name, complete work address and phone number if known.)

STUART BOWEN - SPECIAL INSPECTOR GENERAL
SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION
2011 CRYSTAL ▓▓▓ DRIVE
CRYSTAL CITY, VA 22202
GINGER CRUZ - DEPUTY INSPECTOR GENERAL
(703) 428-1044

13 AUG 2007
HQDA - EEO
SAAA - EO
Received

DA FORM 7510, FEB 2004

20

**SECTION IV - BASIS OF COMPLAINT** *(Identify specific race, color, religion, national origin, disability, age, sex, or reprisal if alleged.)*

☑ RACE **AFRICAN AMERICAN**    ☐ COLOR _____    SEX ☐ Male ☑ Female

☐ AGE _____    DATE OF BIRTH _____    ☐ NATIONAL ORIGIN

☐ RELIGION _____    DISABILITY ☐ Mental _____    ☐ Physical _____

☐ REPRISAL _____

*(Date(s) of prior EEO activity)*

**SECTION V - MATTER(s) GIVING RISE TO COMPLAINT** *(Specify who, what, where, and when.) (Use additional sheet of paper if necessary.)*

SEE ATTACHMENT.

**SECTION VI - RELIEF SOUGHT**

COMPENSATORY DAMAGES
EMPLOYMENT AND SALARY (PRIOR EMPLOYMENT)

DA FORM 7510, FEB 2004

PAGE 2 OF 5

21

## SECTION VII - RIGHTS AND RESPONSIBILITIES

THE AGGRIEVED WAS PROVIDED WITH THE AGGRIEVED PERSON'S RIGHTS AND RESPONSIBILITIES NOTICE AND WAS SPECIFICALLY ADVISED OF THE FOLLOWING:

☐ The basis(es) for filing pre-complaint, formal complaint, and/or class complaint, and of right to file a formal complaint of discrimination.

☐ The pre-complaint, formal and/or class complaint process.

☐ The 45-day calendar requirement from effective date of personnel action or of the date of the matter alleged to be discriminatory.

☐ The role of the EEO counselor, including that the counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral.

☐ The activity's Alternate Dispute Resolution (ADR) Program and right to elect either ADR (if offered) or traditional EEO counseling.

☐ The right to remain anonymous during the pre-complaint process.

☐ The right to representation throughout the complaint process.

☐ Responsibility of the aggrieved to notify the EEO office in writing of any change in address and/or phone number.

☐ Responsibility of the aggrieved to notify the EEO office in writing of non-attorney or attorney representation, including address and phone number.

☐ The possible election requirement between a negotiated grievance procedure, MSPB procedure and the EEO complaint process.

☐ The election options in age and wage-based discrimination complaints.

## SECTION VIII - ELECTION OF REPRESENTATION

☐ ATTORNEY    ☐ NON-ATTORNEY    ☐ NON-REPRESENTATIVE

| NAME OF REPRESENTATIVE | | ADDRESS | |
|---|---|---|---|
| TELEPHONE NUMBER | FAX | | E-MAIL |

## SECTION IX - ALTERNATE DISPUTE RESOLUTION (ADR)

☐ Matter determined not appropriate for ADR    _____
                                                  (Aggrieved must sign and date)

☐ Matter determined appropriate for ADR    _____
                                             (EEO Officer must initial and date)

  ☐ Wishes to participate in ADR, if offered    _____
                                                  (EEO Officer must initial and date)

      Date of written offer of ADR    _____

      Date of Agreement to Participate in ADR    _____

      Name of assigned ADR facilitator/mediator    _____

      Date ADR facilitator/mediator assigned    _____

Result of ADR:

☐ ADR was successful. Negotiated settlement agreement, signed on    _____ (YYYYMMDD), is

☐ ADR was not successful. The aggrieved was issued a Notice of Right to File a Formal Complaint of Discrimination on _____ (YYYYMMDD) and notified of requirement to file a formal complaint within **15 calendar days** after receipt of Notice of Right to File. The aggrieved was provided a DA Form 2590, Formal Complaint of Discrimination.

## SECTION X - TRADITIONAL EEO COUNSELING (EEO official to complete only those which apply.)

☐ Election of traditional counseling.

      Name of assigned EEO counselor    _____

      Date EEO counselor assigned    _____

☐ Election to remain anonymous.

☐ Election to waive right to remain anonymous.

☐ Declined to pursue matter under Title VII.

FORM 7510, FEB 2004

## SECTION XI - WITNESS INQUIRY

a.  Witness Information *(List all witness data here. Number sequentially and include name, title, organization, phone number, and relevant basis(es) information.)*

b.  Witness Statements

FORM 7510, FEB 2004

23

# DENISE N. BURGESS_____

**To:**       Directorate of Equal Employment Opportunity
              U.S. Army Resources and Programs Agency
              Office of the Administrative Assistant to the Secretary
              2530 Jefferson Davis Highway, Taylor Building
              Arlington, VA  22202-3905
              Attn:   Ms. Stephanie Dawkins
                      Intake Specialist

**From:**    Denise N. Burgess

**Subject:**  EEO Complaint

**Date:**     August 13, 2007


This memo is a formal Equal Employment Opportunity complaint.  I and at least one of
my colleagues – Patricia Redmon – have been discriminated against by our employer,
The Special Inspector General for Iraq Reconstruction (SIGIR).  It appears we were both
targeted for termination as a result of our race.  Moreover, I have suffered retaliation for
complaining about this discrimination to SIGIR's current Deputy Inspector General, the
individual responsible for the discriminatory personnel decision.  I was dismissed within
72 hours of a verbal complaint and 24 hours of a written complaint.

Moreover, I and at least three other professional staff have been discriminated against
based on our gender.  We have been subjected to a targeted campaign of harassment and
intimidation aimed at ensuring our departure.  In the past two months SIGIR's entire
contingent of female senior staff, with the exception of the current Deputy Inspector
General, have resigned or been terminated.

The dates of the alleged violations are April 2007 through July 27, 2007.

Complaining Party:    Denise N. Burgess
                      ████████████
                      404-790-7900

Respondent:           Mr. Stuart Bowen, Special Inspector General
                      Ms. Ginger Cruz, Deputy Inspector General
                      Special Inspector General for Iraq Reconstruction
                      2011 Crystal Drive, 11th Floor
                      Crystal City, VA  22202
                      703-428-1100
                      Number of Employees:  Approximately 130



**24**

-2-

## EEO COMPLAINTS

SIGIR's abrupt decision to eliminate my position appears to be in retaliation for complaining about the fairness of the decision to terminate my staff assistant. The subsequent elimination of my position can be clearly traced to my verbal EEO complaint on July 19th and my e-mail complaint on the morning of July 23rd (see Tab A). I was informed of my termination within hours of sending the complaining e-mail.

In a July 19th meeting with the Deputy Inspector General, I was informed that my assistant Ms. Patricia Redmon would be terminated in two weeks. At that time I specifically raised my concern that the decision was unfair. I questioned the equality of the decision to terminate Ms. Redmon since the Public Affairs sister section, Congressional Affairs, was overstaffed. I asked if anyone from the Congressional Affairs unit would also be released. Ms. Cruz said no. The Congressional Affairs section had four full-time employees – two at the SES level who are White, one at the Deputy level who is also White, and one staff assistant who is African-American. The Public Affairs section had two full-time employees – one at the SES level and one staff assistant, both of whom are African-American. Both sections have equal workloads. (In fact, a credible argument can be made that the Public Affairs workload exceeds that of Congressional Affairs.) However, the decision was made to terminate only Ms. Redmon despite her excellent work record.

I told Ms. Cruz that I it would be extremely difficult for me to manage the workload with out an assistant. She said I could expect help from her, the Inspector General and other AIGs. At no time did she indicate that my position was in danger of elimination due to budget cuts. In fact, her comments clearly indicated an expectation I would continue in my position well beyond Ms. Redmon's release date.

On Monday, July 23rd I raised again my EEO complaint, this time in an e-mail copied to appropriate SIGIR senior staff. In it, I stated my position that the decision to terminate Ms. Redmon was unfair and unequal. I requested a management meeting including the outgoing Deputy Inspector General, SIGIR's Chief of Staff, SIGIR's General Counsel, and SIGIR's HR Director to reconsider the decision to terminate Ms. Redmon. In clear retaliation for my complaints, I was terminated that afternoon.

The following data-points leave little room for speculation as to motive:

- My performance during my tenure at SIGIR was excellent (see Tab B);
- the workload and the nature of the work in Public Affairs had not changed;
- the organization's public affairs needs had not changed. Senior-level communications counsel was still required to prevent public affairs missteps and bad press advice (see Tab C);

**25**

-3-

**Data Points toward motive (con't)**
- no objective criteria could be produced to justify the decision to eliminate my position and Ms. Redmon's; both were ad hoc and based on personal prejudice;
- the Deputy Inspector General admitted the decisions were based on a need for the "right mix of people." Neither I nor Ms. Redmon fit the unknown requirements for "the right mix of people," however, the sole common denominator between us is race.

Moreover, I was informed that a "new" position had been created in the allegedly defunct Public Affairs section. However, I was not offered the new Director of Public Affairs position, although I am professionally qualified to fill it. It was offered to a former employee, who presumably met the "right mix of people" criteria. Ms. Kristine Belisle, my former deputy, was hired to fill the position, the requirements of which remain substantively unchanged (see Tab D). I am told Ms. Belisle's salary is within the same range as mine even though Ms. Belisle's experience, credentials, professional accomplishments, and education are not commensurate with mine (See Tab E). – – She is, however, White.

**HARASSMENT AND INTIMIDATION**
Since being rehired by SIGIR and subsequently appointed as Deputy Inspector General, Ms. Cruz has undertaken a subtle but targeted campaign to prevent me from carrying out my duties to the best of my abilities. Her actions were aimed at harassing and intimidating me, and caused me to suffer illness, insomnia, humiliation, and untold stress. Following are examples of harassment and intimidation I endured:

- Ms. Cruz exclusively reviewed my time and attendance records in hopes of finding irregularities, according to SIGIR administrative officials;
- SIGIR leadership attempted to monitor my e-mail traffic without the proper authority from the Department of Defense, according to SIGIR administrative officials;
- Ms. Cruz encouraged my former Deputy, Ms. Kristine Belisle, to challenge my authority as the Public Affairs director. She clearly encouraged Ms. Belisle to defy normal professional standards and SIGIR established policy by suggesting Ms. Belisle approach the Special Inspector General with an interview request, despite repeated guidance from me that all requests of this nature should come to me first (see Tab F);
- When Ms. Belisle's contract was not renewed as the result of documented poor performance, Ms. Cruz encouraged Ms. Belisle to file a complaint against me accusing me of creating a hostile work environment. My response to Ms. Belisle's accusations are submitted for the record (see Tab G). I was advised by the then Deputy Inspector General, Ambassador Robin Raphel who spearheaded an inquiry into the matter, that the investigation concluded that Ms. Belisle's complaints failed to meet the government's definition of a hostile work environment and thus her accusations were found to be without merit;

-4-

**HARASSMENT AND INTIMIDATION (CON'T)**
- undercutting my authority by hijacking an assignment given to me by the Special Inspector General. Ms. Cruz issued guidance to the wider staff in contradiction to a request from me for comments on a proposed guidance change (see Tab H);
- isolating me from the consultative process regarding media activity (see Tab I);
- delaying hiring staff into my section, forcing me to accomplish the work previously done by two full-time individuals;
- targeting my sole staff member, (who is also African-American) for termination when an equivalent unit (in workload and importance to the mission – Congressional Affairs) had four full-time staff and was slated for no reductions;
- refusing to address my staff assistant by her proper name (Patricia vice Pat), despite repeated requests by me and Ms. Redmon to do so. Ms. Redmon was warned by her colleague that she would "lose her job" if she continued to challenge Ms. Cruz by insisting on being address by her proper name.

**ATTITUDES REVEALED**
The current Deputy Inspector General's views regarding issues of race and discrimination were made clear to me in a comment she made at the start of a staff meeting in April, shortly after her arrival. Her comments caused me immediate concern. She said "These people who file complaints are looking for an excuse for their own incompetence – they're always the weak ones." I was completely taken aback and immediately concerned since EEO is so strongly associated with African-Americans. I did not openly challenge her, but instead engaged her in conversation on the topic to ensure I'd heard her right. She indeed reconfirmed my understanding of her comments.

Moreover, Ms. Cruz sent an e-mail in late April thanking me for my help with managing negative press coverage regarding an on-going U.S. government investigation of Ms. Cruz and Mr. Bowen. The investigation is the result of complaints filed with the President's Council on Integrity and Efficiency by former SIGIR employees. In that e-mail, Ms. Cruz reveals her own negative assessment of our working relationship despite the fact that no negative incident had taken place between. It appears she had developed a negative assessment of me independent of any substantive interaction with me (see Tab J).

Moreover, several colleagues (who will not be named due to legitimate fears of retaliation) warned me prior to her arrival and thereafter, that Ms. Cruz had no tolerance for highly-competent women; that she considered them a threat to her position; and that she had a reputation for targeting women for harassment and termination. I was further warned that the Inspector General would take no action to curb excessive or unethical behavior by Ms. Cruz. I was told that before she was rehired to SIGIR (after resigning her employment at the U.S. Embassy in Baghdad where she could not work successfully with the Foreign Service staff – see Tab K), she boasted "I'm back and people are just going to have to move over." Many of my colleagues believed her threat was directed at me.

27

-5-

## BACKGROUND

I was targeted for dismissal by SIGIR for reasons completely unrelated to my professional performance – which was documented as excellent up to my last day at SIGIR (See Tab L). The Special Inspector General approved the decision to illegally terminate me, and took no action to control the activities of his new Deputy despite numerous warnings by members of his senior staff that she was managing poorly and acting unethically, if not illegally. Since I refused to resign under pressure and intimidation, and I had the temerity to challenge discriminatory personnel practices, I was terminated. SIGIR has relied on the pretext of a shadowy office reorganization – that allegedly was driven by an unsubstantiated demand by OMB that SIGIR cut its budget – to attempt to justify these illegal personnel actions.

Based on warnings from my colleagues, comments, and actions, I am convinced I was singled-out for harassment, intimidation and ultimately termination as a result of my race and gender. I was the sole African-American senior manager at SIGIR. I also note that every female senior manager at SIGIR has been subjected to a relentless campaign of intimidation and harassment since the arrival of the new Deputy Inspector General. The former Deputy Inspector General, Ambassador Robin Raphel and former AIG Marthena Cowart resigned under attacks launched against their professionalism and credibility.

## ABUSE OF 3161 HIRING AUTHORITY

SIGIR has been granted 3161 hiring authority, which means the organization's employees do not enjoy civil service rights and protections. This is as it should be, given the temporary nature of the organization. However, 3161 hiring authority does not absolve the organization of its ethical responsibility to conform to established US government rules and regulations. More importantly, it is not a license to ignore the law. SIGIR's leadership has abused the freedom from personnel protections that 3161 hiring authority offers. Far more egregious, SIGIR may have used that authority to break the law.

In general, dismissal should be based on documented poor performance – whether under civil service rules or 3161 hiring authority. The liberty afforded by this unique authority is not mandated to allow capricious hiring and firing of employees. It is mandated to assist a temporary USG organization to hire qualified individuals without the lengthy process required for regular civil service appointments. The absence of civil service protections under 3161 hiring authority has left SIGIR employees victim to the whims and personal prejudices of SIGIR's leadership.

-6-

## BUDGET CUTS LEADING TO REORGANIZATION

Many U.S. government agencies have been forced to reorganize in response to budgetary constraints. Under normal federal agency standards and regulations, established practices for fairly and equitably managing staff reductions during a cost-cutting exercise are followed. They include: a hiring freeze, capturing reductions from attrition, canceling non-essential travel, curtailing overtime, downsizing discretionary projects, and other cost-saving measures. If a reduction in force is necessary, it must be accomplished through a transparent and fair process, with clear mission-based criteria as the means for determining those to be dismissed.

Should positions be downgraded, employees slated for termination are entitled to the right of first refusal for those positions remaining for which they qualify. I was afforded no such consideration under the current reorganization. However, when the SIGIR Congressional Affairs section underwent a reorganization in June to accommodate a new AIG for Congressional Affairs, the sitting AIG was removed from her position and was offered another position, created for her. This narrative demonstrates a clear double standard at SIGIR.

All employees should understand the means by which they were selected for termination. Well-established practices such as those noted above serve as a bulwark against discriminatory decision-making. They are widely practiced throughout both the public and private sectors and SIGIR is not an exception in this matter. Few, if any of the actions described above were taken in response to the alleged budget deficit of 2 million dollars (out of a total budget of 35 million dollars). In fact, new employees continue to be hired and new positions created, bringing into question the credibility of the contention that Ms. Redmon and I were terminated to save money. Moreover, I understand the individual hired to replace me is earning only 10,000 dollars less than my previous salary – hardly a substantive cost savings. Even when an employee is terminated due to legitimate budget cuts, selection based on race and/or gender is still illegal. The new Deputy Inspector General's responses to my questions regarding the basis for my termination clearly indicate no objective, mission-based criteria were used in selecting me and Ms. Redmon for termination. (See Tab M).

I note that the claim of required budget cuts is itself questionable. At SIGIR's July 12th staff meeting – where the neither the current Deputy Inspector General nor the Special Inspector General were present – the AIG for Congressional Affairs reported that, in a meeting the previous day with OMB, the officials there assured the SIGIR delegation that any budget shortfall would be covered through a supplemental request this year. The AIG for Congressional Affairs said he was not concerned about SIGIR's budget and was completely confident any budget issues would be adequately addressed by Congress. He noted that several pieces of pending legislation, when passed, would actually increase SIGIR's responsibilities and budget.

29

-7-

CONCLUSION

Since my arrival at SIGIR I have received only positive feedback regarding my work from the Special Inspector General, Mr. Stuart Bowen, and also from Ambassador Robin Raphel, the previous Deputy Inspector General, as well as from my colleagues within SIGIR and from SIGIR's outside media contacts. In a meeting to discuss Ms. Cruz's appointment as the new Deputy Inspector General in June, Mr. Bowen told me I was doing an excellent job and assured me that I would be with the organization "for the duration." There was no mention of potential budget constraints nor of any possibility of a major reorganization – this, less then three months before my position was "eliminated." In addition, I received a monetary award from Mr. Bowen in early June for outstanding performance.

Given these facts, it is clear my professional performance is not in question.

As regards the required budget cuts, there was no hard evidence presented to SIGIR senior staff of a 2 million dollar deficit, nor any focused discussion among the senior staff regarding cost control. There have been no Congressional budget cuts. There was no plan developed, nor implemented with consistent, transparent cost-control measures. In fact, the SIGIR recently hired new senior staff while at the same time claiming budget constraints. Moreover, the Special Inspector General offered to expand staffing of the LLCR team during a board meeting in July. Finally it was reported by a reliable source that OMB would resolve any budget deficit through a supplement funding request to Congress.

Given these facts, it is clear SIGIR's alleged budget deficit had not reached a sufficiently critical stage to warrant immediate and summary terminations.

The "shadowy reorganization," driven by an alleged, immediate requirement for budget cuts, suffers from an alarming lack of transparency. SIGIR's senior staff was not consulted regarding the timing, manner, or even the need for a reorganization. Even if extreme cost-cutting measures were required, they were taken in an ad hoc manner reflecting the personal wishes of one individual with the support of the Special Inspector General. As a result they are unfair and unequal. Moreover, it appears African-Americans are bearing a disproportionate burden of the decision to eliminate positions. There was no organized, communicated plan for a drawdown of SIGIR staff. Instead, there was one individual making decisions based on her own prejudices and attitudes, in the context of a well-known, inexplicable and long-standing alliance at the senior most level of SIGIR.

Given these facts, it is clear the claim that both positions in the Public Affairs Section had to be eliminated for cost-savings and for mission-based reasons is not credible.

*30*

| SECTION XI - WITNESS INQUIRY *(Cont'd)* |
|---|

Witness Statements *(Cont'd)*

c. Documents Reviewed *(List)*

d. Reviewed Documents Revealed

| SECTION XII - OUTCOME OF PRE-COMPLAINT INQUIRY |
|---|

☐ Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on _____ *(YYYYMMDD)* at which time I informed the aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken.
I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination. The aggrieved is aware of the requirement to file a formal complaint within **15 calendar days** of the final interview if not satisfied with the results of my inquiry.

☐ Resolution was accomplished. Negotiated settlement agreement, signed on _____ *(YYYYMMDD)*, is attached.

| PRINTED NAME OF EEO COUNSELOR | SIGNATURE OF EEO COUNSELOR |
|---|---|
| Attachments:<br>1. Extension of counseling *(if applicable)*<br>2. Copies of reviewed documents | DATE SUBMITTED TO EEO OFFICER *(YYYYMMDD)* |

FORM 7510, FEB 2004

*31*

PAGE 5 OF 5

## Notice to EEO Complainant Seeking Compensatory Damages

### I. Introduction

A review of your employment discrimination complaint indicates that you are, or may be, seeking compensatory damages as part of the relief you are requesting, or that you may be entitled to compensatory damages should you prevail in your complaint. Compensatory damages are awarded to repay a complaining party for losses or suffering experienced due to the alleged discriminatory act or conduct. (However, currently the law does not provide for payment of compensatory damages in complaints alleging violation of the Age Discrimination in Employment Act or the Equal Pay Act.) In order to allow the agency to evaluate the merits of your claim, you are required to provide substantiating evidence of pecuniary damages, nonpecuniary damages, or both, as explained below. In addition, the Equal Employment Opportunity Commission (EEOC) requires that the agency inform you of certain matters relating to your claim for damages.

### II. Substantiating a claim for damages

#### A. Past and Future Pecuniary Compensatory Damages:

1.  Past pecuniary losses are monetary expenses incurred as a result of an employer's unlawful action, including job-hunting expenses, moving expenses, medical expenses, psychiatric expenses, physical therapy expenses, and other quantifiable expenses. If you are claiming such losses, you must provide documentary evidence of these expenses, such as paid bills, canceled checks, or receipts.

2.  Future pecuniary losses are monetary expenses that are likely to occur after resolution of a complaint, such as the projected cost of physical and/or psychiatric therapy that extends into the future. If you are claiming such future requirements, statements from appropriate health care professionals are recognized as proper substantiation of such claims.

#### B. Nonpecuniary Compensatory Damages:

1.  Nonpecuniary compensatory damages are monetary compensation for your intangible injuries experienced as a result of an employer's unlawful discriminatory action. Consistent with the guidance from the EEOC, you are advised as follows in regard to claiming and substantiating nonpecuniary damages:

2.  You must submit objective evidence, such as your statement concerning your emotional pain or suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or

*32*

reputation, injury to credit standing, loss of health and any other intangible losses that you believe you incurred as a result of the alleged discriminatory conduct.

3. You may submit statements from others, including family members, friends, health care providers, other counselors (including clergy) addressing, for example, your outward manifestations, or physical consequences, of emotional distress. Such manifestations may include sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self-esteem, or excessive fatigue.

4. Objective evidence, in addition to statements from yourself and others, may include documents indicating expenses, if any, for your medical treatment, counseling, and so forth, that are related to the intangible injury allegedly caused by the discrimination you have claimed.

## III. Information you should know about claims for compensatory damages

Whether you are claiming pecuniary, nonpecuniary damages or both, please note the following additional requirements:

A. You must establish a causal connection, or nexus, between the alleged discriminatory action(s) and any resulting physical, emotional or other harm you claim has occurred.

B. You have the duty to mitigate your damages and may not recover damages for any harm that you could have avoided, or minimized, with reasonable effort.

C. The EEOC requires that you be advised that your request for compensatory damages may permit the agency to seek personal and sensitive information from you in order to determine whether the injury you claim is linked solely, partially, or not at all to the alleged discriminatory conduct.

Please provide the requested documentation to this office within 15-calendar days of your receipt of this notice. If you are unable to comply with this deadline, please request an extension in writing.

Emma J. Ruffin
Acting Director

33

**Dawkins, Stephanie M Ms EEO**



| | |
|---|---|
| | Denise Burgess [burgess.denise@gmail.com] |
| | Monday, December 03, 2007 11:59 AM |
| | Dawkins, Stephanie M Ms EEO |
| **Subject:** | Dates |

Hi Stephanie,

Here's the additional information you requested.  I apologize for the delay in getting it to you.  The dates are as accurate as I can remember.

Reviewing time sheets:  June/July 2007
Possible monitoring e-mail:  March through July 2007 Belisle challenges authority:  March 2007 Belisle charges hostile work environment:  May 2007 Hijacking assignment:  July 2007 Isolating from consultative process:  June/July 2007 Delaying hiring staff:  May/July 2007 Targeting for termination:  July 2007 Refusing to use proper name: March/July 2007

Can you give me a status update on where we are in the process, the next steps and approximate timeframes for the steps?

Many thanks,
Denise

34

1

## washingtonpost.com

# ~~Ins~~pector General for Iraq Under Investigation

### Congress Among Those Probing Allegations of Overspending, Mismanagement

By Robin Wright
Washington Post Staff Writer
Friday, December 14, 2007; A01



Advertisement

Smart drivers know
rosenthalauto.com

Over the past four years, Inspector General Stuart W. Bowen Jr. and his staff have probed allegations of waste and fraud in the $22 billion U.S. effort to rebuild Iraq. Their work has led to arrests, indictments and millions of dollars in fines. And it has earned Bowen, who had been a legal adviser to President Bush, many admirers among both parties on Capitol Hill for his efforts to identify overspending and mismanagement.

But Bowen's office has also been roiled by allegations of its own overspending and mismanagement. Current and former employees have complained about overtime policies that allowed 10 staff members to earn more than $250,000 each last year. They have questioned the oversight of a $3.5 million book project about Iraq's reconstruction modeled after the 9/11 Commission report. And they have alleged that Bowen and his deputy have improperly snooped into their staff's e-mail messages.

The employee allegations have prompted four government probes into the Office of the Special Inspector General for Iraq Reconstruction (SIGIR), including an investigation by the FBI and federal prosecutors into the agency's financial practices and claims of e-mail ~~m~~onitoring, according to law enforcement sources and SIGIR staff members. Federal ~~pros~~ecutors have presented evidence of alleged wrongdoing to a grand jury in Virginia, ~~whi~~ch has subpoenaed SIGIR for thousands of pages of financial documents, contracts, personnel records and correspondence, several sources familiar with the probe said.

The House Oversight and Government Reform Committee, the Presidential Council on Integrity and Efficiency, and the Army's Equal Employment Opportunity Office are also engaged in separate investigations into complaints from SIGIR staff members, according to current and former SIGIR officials and others familiar with the individual probes. The allegations range from retaliatory firing of a whistle-blower to "sustained patterns of inappropriate behavior," according to employee complaints obtained by The Washington Post.

Bowen declined a request for an interview but addressed several questions by e-mail. He said that "no current SIGIR official has been notified that he or she is the subject or target of any such investigation." He also said the congressional investigation had ended, and he refused to comment on the complaint to the Army.

Spokesmen for the FBI, the U.S. attorney for the Western District of Virginia and the presidential council refused to comment, but law enforcement sources said all three investigations are continuing. David Marin, the minority staff director of the House oversight committee, said yesterday that the congressional investigation, which focuses on charges made by SIGIR whistle-blowers, "is ongoing."

There are now so many probes that a senior SIGIR official said the agency's Crystal City headquarters is "ripped by paranoia. It's almost a siege mentality." **35**

~~Tha~~t official, and more than two dozen other current and former SIGIR employees interviewed for this article, ~~spo~~ke on the condition of anonymity because FBI and presidential council officials have asked them to refrain from public comments while the investigations proceed. Others did not want to be quoted by name because of

Inspector General for Iraq Under Investigation

fear of retribution by top SIGIR officials.

SIGIR was created by Congress in 2004 to act as the chief watchdog over the effort to stabilize Iraq by building hospitals and schools, training security forces and increasing electricity production. The agency quickly earned a reputation as a tenacious, apolitical investigative body, identifying cases of corruption, wasteful spending and mismanagement that have led to 13 arrests and more than $17 million in fines.

Members of Congress have heaped praise on Bowen, who served as a legal adviser to Bush when he was governor of Texas. He has been asked to testify at dozens of congressional hearings. Democrats have expressed particular delight that a close ally of the president's was willing to speak out about problems with Iraq's reconstruction.

SIGIR claimed in an October 2006 report that its "financial impact" -- the cost savings resulting from its work, the funds it recovered and other benefits -- was as much as $1.87 billion. The report led to an extension of SIGIR's mandate last December. "SIGIR's oversight during this process has been essential to ensuring that the taxpayers' dollars are being used effectively and efficiently," Sen. Norm Coleman (R-Minn.) said at the time.

But after other government agencies challenged that figure, arguing that proper accounting standards were not used in calculating the estimate and that SIGIR did not distinguish between U.S. funds and Iraqi funds, SIGIR revised the number in a report this summer. The new estimate was less than $95 million, only 5 percent of the previous claim.

Government investigators have requested copies of many SIGIR records on costs and savings, according to an investigative document and people familiar with the probe. SIGIR changed its calculations this year, Bowen said, to reflect actual savings and not potential savings.

As SIGIR grew in prominence, dissension was growing within the agency's offices. In 2006, several former SIGIR employees sent an eight-page complaint to the presidential council, an executive-branch oversight body, alleging that the agency's leaders had engaged in fraud, violated federal regulations, created a hostile workplace, abused their positions and "sustained patterns of inappropriate behavior." The council launched an investigation and eventually referred some of the matters to the FBI.

In an e-mail to SIGIR staff members, Bowen described the complaint filed with the presidential council as a result of "disgruntled former employees."

Since then, investigators have broadened their inquiry to include allegations that SIGIR management may have tried to influence staff members who were sought for questioning by investigators, according to people familiar with the inquiry.

Among the issues that have sparked the most internal tension have been SIGIR's overtime practices. Last year, 30 agency employees earned more than the $165,200 salary of a senator or a congressman, according to internal SIGIR documents obtained by The Post. Seven earned $100,000 or more above their salaries, the documents show. More than two dozen earned more than the $174,900 in salary and benefits paid last year to Gen. David H. Petraeus, the top U.S. military commander in Iraq. One SIGIR inspector, who had a $142,000 base salary, earned $346,017 last year, in part by claiming more than 1,200 hours of overtime.

SIGIR staff members, like other federal civilian employees, receive hazard and hardship pay equal to 70 percent of their salaries when they are in Iraq.

At least 30 SIGIR employees charged between 800 and 1,400 hours of overtime and compensatory time in 2006 -- up to almost nine months of additional work stuffed into the year. Thirty-seven others charged between 200 and 725 hours of overtime and comp time. **36**

"The number of hours didn't wash," said a senior SIGIR official. "It's physically and mentally impossible to work that many hours."

en's deputy, Ginger Cruz, said SIGIR's overtime practices are "cost-effective" because one employee ng maximum overtime is cheaper than hiring two people. She said SIGIR this year reduced overtime allowances to 24 hours per two-week pay period. She also noted that other U.S. government agencies provide generous financial packages to employees serving in Iraq.

Federal employee salaries are subject to an annual cap, which is $215,000 for this year. But additional earnings can be paid out the following year or after workers leave the agency.

Government investigators are also probing SIGIR's other expenses, including the book project about Iraq's reconstruction, according to staff members questioned by investigators. The presidential council informed SIGIR last year that the agency was being investigated for "possible fraud, waste and abuse in connection with the printing of the SIGIR history book and possible false statements made to the Office of Management and Budget to justify SIGIR funding," according to a copy of a letter from the council to SIGIR obtained by The Post.

Bowen described the book as SIGIR's "potentially most important project" in a memo he sent last month to the secretaries of state and defense and eight congressional committees.

According to people questioned by investigators and documents obtained by The Post, one of the most serious allegations that the FBI and federal prosecutors are probing is whether top SIGIR officials broke federal laws by accessing employee e-mail messages stored on computers maintained by the Army without proper authorization.

east four former senior SIGIR officials said they told investigators that Bowen and Cruz looked at employee ail. One of them claimed to be an eyewitness to Bowen going through the e-mail of three employees. Another said Bowen and Cruz read the messages "to find out who was loyal and who was not."

The former officials said the e-mail monitoring began in 2005, before the government investigations commenced. They said the monitoring continued into this year in an effort to identify employees suspected of speaking with investigators and other government agencies.

In an interview, Cruz said she participated in administrative investigations "some time ago" that involved a "limited review" of three people's e-mail. Bowen said that "SIGIR policy states that employees do not have an expectation of privacy in the use of their government computers. . . . E-mail reviews can, and have been, conducted by SIGIR management to investigate allegations of work-related misconduct."

The investigations are focusing largely on the actions of Bowen and Cruz, according to current and former senior staff members who have been questioned, as well as congressional sources and other U.S. officials familiar with the probes.

Cruz, a former spokeswoman for the governor of Guam, originally joined SIGIR as a contractor working for the accounting firm Deloitte & Touche. Current and former SIGIR employees have told investigators that Cruz threatened to put hexes on employees and made inappropriate sexual remarks in the presence of staff members. Cruz is a self-described wiccan, a member of a polytheistic religion of modern witchcraft. "We warned Ginger not to talk about witchcraft, that it would scare people," a former SIGIR employee said.

ruz denied making comments of a "sexual nature" and noted that she was cleared of any wrongdoing by an rnal SIGIR investigation into the claim.     **37**

After the detailed but anonymous complaint was sent to the presidential council, Cruz sought special

dispensation from Bowen for SIGIR to pay her legal fees -- an uncommon practice within government, according to U.S. officials. So far, the agency has paid for more than $32,000 of Cruz's legal fees, according to copies of the invoices provided by SIGIR under a Freedom of Information Act request. Bowen said the agency's general counsel advised him that the payment of Cruz's legal fees was permissible.

The Army's Equal Employment Opportunity Office probe is focusing on a complaint by a former employee who had raised allegations of SIGIR discrimination in the dismissal of her African American assistant, which she charges led to her own dismissal in retaliation. The employee, Denise Burgess, stated in her complaint that she was terminated on the same day she spoke to the presidential council, just two months after receiving an $8,500 bonus from Bowen for exemplary work. Current and former SIGIR employees said they have been asked by FBI investigators about Burgess's termination.

Several staffers interviewed at the suggestion of SIGIR expressed loyalty to Bowen. One senior staff member said he has not seen any firsthand evidence of illegal or inappropriate behavior.

Several current and former officials expressed concern that the practices of SIGIR's leaders are discrediting the work of the agency. "SIGIR's purpose was to look at reconstruction and then go away," said a former senior official. "Are they contributing to the good anymore? No. Were they before? Yes. But they should have stuck to the plan and been willing to stand down in 2008."

*Staff researcher Julie Tate contributed to this report.*

---

**Post a Comment**

**View all comments** that have been posted about this article.

You must be logged in to leave a comment. Login | Register

Submit

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post.

© 2007 The Washington Post Company

Ads by Google

**Private Investigators**
Private Investigators in Your Area Can Get the Information You Need!
www.Superpages.com

**Beach Cities Protection**
Executive Protection, World Wide Services 1 877 PROTCU-2
/ww.beachcitiesprotection.com

**Civilian Contractor Jobs**
h Paying Jobs in Iraq-Worldwide 50 to 300K a Year – Tax Free
w.CivilianContractorJobs.com

*38*

## INFORMATION PAPER

AARP-EE                                                    December 14, 2007

SUBJECT: Equal Employment Opportunity Complaint of Discrimination filed against Special Inspector General for Iraq Reconstruction

1. Purpose. To provide information concerning the formal complaint of discrimination filed by Ms. Denise N. Burgess, former employee, Assistant Inspector General for Public Affairs, Special Inspector General for Iraq Reconstruction (SIGIR).

2. Organization. SIGIR, 2011 Crystal Drive, Room 1100, Arlington, Virginia, 22202.

3. Stage of Complaint. A mediation session was held on October 4, 2007 between Ms. Burgess and SIGIR management officials; however, the mediation was unsuccessful. On October 24, 2007, Ms. Burgess acknowledged receipt of her Notice of Right to File a Formal Complaint of Discrimination. Ms. Burgess filed a formal complaint on 28 October 2007.

4. Alleged Discriminating Officials. Mr. Stuart W. Bowen, Jr., SIGIR, Ms. Ginger Cruz, Deputy SIGIR, 2011 Crystal Drive, Arlington, Virginia, 22202.

5. Basis. race (Black), sex (female), national origin (African American), age (46), reprisal for prior EEO Activity.

6. Issues/Allegations. Hostile Working Environment due to Harassment. To support her allegation, Ms. Burgess cites the following examples:

a. From March 2007 through July 2007, Ms. Kristine Belisle, former SIGIR Deputy, challenged her authority.

b. In May 2007, Ms. Kristine Belisle attempted to hijack her work assignments.

c. From May 2007 through July 2007, she and her staff were targeted for termination by Ms. Ginger Cruz, when an equivalent office, which she supervised, had four full-time staff and was not targeted for staff reductions.

d. From June 2007 through July 2007, Ms. Ginger Cruz delayed hiring staff into her section, forcing her to complete tasks which were formerly completed by two full-time individuals.

e. From June 2007 through July 2007, Ms. Ginger Cruz, Deputy SIGIR, exclusively reviewed her time and attendance records with the purpose of finding irregularities.

*39*

1

AARP-EE

SUBJECT: Equal Employment Opportunity Complaint filed against Special Inspector General for Iraq Reconstruction

    f. In July 2007, Ms. Ginger Cruz isolated her from consultative process regarding media activities.

    g. In July 2007, Ms. Ginger Cruz insisted on addressing one of her staff members by an improper name.

    h. On July 23, 2007, she received a memorandum from Mr. R. G. "Nick" Arnston, Chief of Staff for SIGIR informing her that effective September 1, 2007, her employment with SIGIR, would be terminated.

7. Requested Relief.   Compensatory and Punitive Damages (no $ amount stated).

8. Status.  Pending legal review of the Acceptance Letter by SIGIR Labor Attorneys, Mr. John Acken and Mr. Justine Martell.

9. Representative:

    a. Agency Representatives:   Messers. Justine Martell and John Acken, Office of the Deputy General Counsel, SIGIR, 2011 Crystal Drive, Room 1100, Arlington, Virginia 22202.

    b. Complainant:  None.

Emma J. Ruffin/604-2736

*40*

## Dawkins, Stephanie M Ms EEO

|         |                                              |
|---------|----------------------------------------------|
| ect:    | burgess.denise@gmail.com<br>Request for Dates on the enclosed documents |
| **Attachments:** | scan.pdf                             |



scan.pdf (192 KB)

Good Afternoon Ms. Burgess:

Enclosed at the PDF attachment above is your write-up on the alleged harassment and intimidation issues. Can you please, go through the issues and see if you can remember the estimated date/time-frame that these "8 incidents" occurred. I need the dates in order to continue with the processing of your Formal EEO Complaint. Also, have you heard any new updates from SIGHR Management or Legal Office on possible settlement.

If you have any questions please send me a quick e-mail.

Thanks,

Stephanie

Stephanie M. Dawkins
Team Leader/EEO Manager
Headquarters, U.S. Army
Office of the Administrative Assistant to the Secretary of the Army Resources and Programs
 ency, Directorate of EEO 2530 Jefferson Davis Highway, 8th floor EEO Suites, Arlington,
 ginia  22202-3905
 one) (703) 604-2738 or DSN 664-2738
 ax)    (703) 602-3491 or DSN 332-3491
(E-mail)  Stephanie.Dawkins@hqda.army.mil

DIGNITY, DIVERSITY, RESPECT


-----Original Message-----
From: dahqeeo@hqda.army.mil [mailto:dahqeeo@hqda.army.mil]
Sent: Friday, November 16, 2007 4:43 PM
To: Dawkins, Stephanie M Ms EEO
Subject:

*41*

Dawkins, Stephanie M Ms EEO



m:                    Denise Burgess [burgess.denise@gmail.com]
                     Sunday, November 18, 2007 10:10 AM
                     Dawkins, Stephanie M Ms EEO
Subject:             Re: Request for Dates on the enclosed documents (UNCLASSIFIED)

Hi Stephanie,

No word from SIGIR.  I think the motivation to settle is gone since the new Chief-of-Staff
is leaving (that's right he's leaving already, apparently didn't like the way they do
business at SIGIR).

I will put down what I can remember as far as the dates go and get it back to you as soon
as possible.

Have a wonderful Thanksgiving holiday.

Denise

On Nov 16, 2007 4:52 PM, Dawkins, Stephanie M Ms EEO <Stephanie.Dawkins@us.army.mil>
wrote:
> Classification:   UNCLASSIFIED
> Caveats: NONE
>
> Good Afternoon Ms. Burgess:
>
> Enclosed at the PDF attachment above is your write-up on the alleged
> harassment and intimidation issues. Can you please, go through the
  issues and see if you can remember the estimated date/time-frame that
  these "8 incidents" occurred.  I need the dates in order to continue
  th the processing of your Formal EEO Complaint.  Also, have you heard
  ny new updates from SIGHR Management or Legal Office on possible
> settlement.
>
> If you have any questions please send me a quick e-mail.
>
> Thanks,
>
> Stephanie
>
> Stephanie M. Dawkins
> Team Leader/EEO Manager
> Headquarters, U.S. Army
> Office of the Administrative Assistant to the Secretary of the Army
> Resources and Programs Agency, Directorate of EEO 2530 Jefferson Davis
> Highway, 8th floor EEO Suites, Arlington, Virginia
> 22202-3905
> (Phone) (703) 604-2738 or DSN 664-2738
> (Fax)    (703) 602-3491 or DSN 332-3491
> (E-mail) Stephanie.Dawkins@hqda.army.mil
>
> DIGNITY, DIVERSITY, RESPECT
>
>
>
>
> -----Original Message-----
  From: dahqeeo@hqda.army.mil [mailto:dahqeeo@hqda.army.mil]
  Sent: Friday, November 16, 2007 4:43 PM
  o: Dawkins, Stephanie M Ms EEO
  ubject:

42

1

```
>
>
>
Classification:   UNCLASSIFIED
veats: NONE
```

43

SEP-12-2007  17:31        SIGIR                      703 428 0818    P.001



# SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION
## IRAQ-WASHINGTON D.C.

### UNCLASSIFIED
FOR OFFICIAL USE ONLY ☐
SECRET ☐
TOP SECRET ☐

#### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Ms. Stephanie Dawkins | FROM: Ms. Dena Nevarez |
| OFFICE: EEO- | DATE: 9/12/2007 |
| FAX NUMBER: (703) 602-3491 | TOTAL NO. OF PAGES INCLUDING COVER: 4 |
| PHONE NUMBER: (703) 604-2738 | SENDER'S REFERENCE NUMBER: |
| RE: Signed Notification of Informal Discrimination Complaint | YOUR REFERENCE NUMBER: |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Ms. Dawkins,

Attached please find the signed Notification of Informal Discrimination Compliant for Mr. Stuart Bowen. As previously mentioned, Ms. Ginger Cruz is out of country. I will get her signed notification once she returns around the 1st of October. Please do not hestitate to contact me should you require further information. I have Mr. Hal Stein on the books for a meeting w/Mr. Bowen on Tuesday, September 25th at 9:00am.

Thank you,

Dena Nevarez



400 ARMY NAVY DRIVE, ARLINGTON, VIRGINIA  22202 • FACSIMILE: 428-0818

44

SEP-12-2007  17:31        SIGIR                                703 428 0818    P.003

## DETAILED SUMMARY OF
## AGENCY WITNESS PARTICIPATION IN COMPLAINT PROCESSING

A complaint of discrimination has been filed against the Department of the Army wherein you have been named as an agency witness. The purpose of the discrimination complaint procedure is to determine whether the alleged discrimination occurred so that appropriate remedial action can be taken, if warranted. It is important for you to understand that complaints of discrimination are filed against the Army and not individuals. Your role in the complaint process is simply that of a witness.

The discrimination complaint procedure consists of a pre-complaint and a formal complaint process. During the pre-complaint complaint process, an Equal Employment Opportunity (EEO) counselor is assigned to make an inquiry into a matter of concern set forth by an individual. The individual presenting the matter(s) or issue(s) of concern is referred to as an "aggrieved person" during the pre-complaint complaint process. You should understand that the EEO counselor cannot reveal the identity of the aggrieved person unless that person has authorized the counselor to do so. You should also understand that the counseling stage is an informal process for resolving the matter(s) at issue. Your participation in the counseling process may serve to assist in resolving the matter(s) quickly.

The EEO counselor will contact you and solicit your input into the issue(s) of concern since the aggrieved person named you as the person responsible for taking, proposing to take, or failing to take the action which has given rise to the complaint at hand. As a witness, you have the right to have a representative present at the interview with the EEO counselor and at any other meeting necessary in the processing of the complaint. You may be represented by a person of your own choosing, provided the choice of a representative does not involve a conflict of interest or conflict of position. You may not be represented by the staff judge advocate or the Army representative for the activity or agency. If the EEO counselor is unable to achieve resolution of the issue(s) of concern, the aggrieved person will be advised of his or her right to further pursue the matter by filing a formal complaint of discrimination.

If the aggrieved person decides to file a formal complaint of discrimination and the complaint is accepted, it will be investigated by an investigator from the Department of Defense, Office of Investigations and Resolutions Division (DoDIRD). The individual filing a formal complaint of discrimination is referred to as the "complainant" during the formal process.

Investigations and hearings in formal discrimination complaint cases are essentially fact-finding processes. The burden of proof remains at all times with the complainant to prove discrimination by a preponderance of the evidence. However, if the complainant establishes sufficient facts to give rise to an inference that the alleged discrimination did occur, the burden of production shifts to the Army to articulate legitimate, non-discriminatory reason(s) for its action(s). Then, the burden of production again shifts to the complainant to prove that the Army's articulated reason(s) are a pretext for discrimination.

*45*

Due to your alleged involvement in the action(s) at issue, the investigator will provide you with a full and fair opportunity to state the facts, as you understand them and to articulate your reason(s) for the alleged action(s) or inactions. Prior to your testimony or the giving of an affidavit, the investigator will allow you to review all documents or portions thereof, which name or implicate you in the complaint. Such documents will be sanitized of any identifying information of persons other than yourself or the complainant. You have the right to representation as previously stated above. You may contact the EEO office to be informed of the progress of the investigation.

Upon completion of DoDIRD investigation, the investigator will provide a Report of Investigation. The complainant will be provided a copy of the DoDIRD Report of Investigation and advised of his or her right to request either a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge or the issuance of a final Army decision.

If, after investigation by the DoDIRD, the complainant requests a hearing, the EEOC will appoint an administrative judge to conduct the hearing and issue a decision on the complaint, including appropriate remedies and relief if discrimination is found. In preparation for and during an EEOC hearing, you will be afforded the same opportunity to review relevant sanitized documents and to testify for the record on any allegations that involve you. Again, you have the right to have a representative present during the EEOC hearing. Upon completion of the hearing, the EEOC administrative judge will then forward his/her decision to the Equal Employment Opportunity Compliance and Complaints Review Agency for final action. Both the complainant and the Army have the right to appeal the decision issued by the administrative judge.

If, after investigation by the DoDIRD, the complainant does not request a hearing before an EEOC administrative judge, the complaint will be forwarded to the Equal Employment Opportunity Compliance and Complaints Review Agency for the issuance of a final Army decision on the merits of the complaint. The complainant has the right to appeal the Army's final decision.

If discrimination is found by either an EEOC administrative judge or the Equal Employment Opportunity Compliance and Complaints Review Agency, the activity commander, or designee, will be required to determine who is culpable and the degree of culpability by conducting further investigation under AR 15-6 or an investigation by an other person to obtain all facts necessary for culpability determination of those involved.

Acknowledgement of Receipt:

Signature of Agency Witness                    Date

9 · 12 · 07

12 SEP 2007
HQDA - EEO
SAAA - EO
Received

2

46

1) MR. Stuart Bowen
Special Inspector General
The Office of Special Inspector
General for Iraq Reconstruction
2011 Crystal Drive
Arlington, Virginia 22202

2) Ms. Ginger

47

helnutt, Stephen L Mr EEO



Denise Burgess [burgess.denise@gmail.com]
Wednesday, August 15, 2007 9:36 AM
Shelnutt, Stephen L Mr EEO
ubject:          Witness contacts

Stephen,

was a pleasure meeting you yesterday.  I feel greatly relieved by your kindness and
rofessionalism.  Needless-to-say, this is a very stressful situation and I appreciate all
e consideration you and Stephanie have given me thus far.

needed to let you know that three people who will need to be interviewed are out of the
untry and won't be back until after labor day.  Two of them, Stuart Bowen and Ginger
uz, are respondents to the complaint and are in both in Baghdad.  I know they will be
ck by Labor Day.  Ambassador Raphel is leaving the country on the 22nd for a long trip.

believe I need to sign a waiver because we will miss the 30 day deadline awaiting the
turn of the respondents.  I can swing by anytime (I live in the neighborhood) you need
to do so.

low is a list of people I think the investigator may want to interview.  I've provided
e contact information.

ny thanks,
nise




tial witnesses:

tricia Redmon

        Former PA staff assistant

        Predmon@hotmail.com <mailto:Predmon@hotmail.com>


assador Robin Raphel

        Former Deputy Inspector General

        Raphelrl@gmail.com <mailto:Raphelrl@gmail.com>


k Arntson

        Chief of Staff (leaving at end September)

        Narntson1@aol.com <mailto:Narntson1@aol.com>


bara Lewis

        Former LLCR team member

        balewis@erols.com



1

you. I'd appreciate it if you would replace it.

Let me know if you need anything else. Thanks so much for your help. Call me if you need anything.

Denise
404-790-7900

49

~-12-2007  17:31        SIGIR                          703 428 0818    P.002



# DEPARTMENT OF THE ARMY
OFFICE OF THE ADMINISTRATIVE ASSISTANT TO THE SECRETARY
US ARMY RESOURCES AND PROGRAMS AGENCY
105 ARMY PENTAGON
WASHINGTON DC 20310-0105

Directorate of
Equal Employment Opportunity

JDRP-EE                                          11 September 2007

MEMORANDUM FOR MR. STUART W. BOWEN, SPECIAL INSPECTOR GENERAL, THE OFFICE OF SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION, 2011 CRYSTAL DRIVE, ARLINGTON, VIRGINIA  22202

SUBJECT:    Notification of Informal Discrimination Complaint

1.  This is to inform you that Ms. Denise N. Burgess, SES-4, Assistant Inspector General for Public Affairs, a former employee within your organization, has filed an informal EEO complaint of discrimination with this office, identifying you as an agency witness. Ms. Burgess alleges that she was discriminated against based on her race (African American) and sex (Female) when:

   On July 23, 2007, she received a letter of Termination with the effective date of September 1, 2007.

2.  As remedial relief the aggrieved seeks the following:

   Compensatory Damages for employment and salary (Prior employment).

3.  As the agency witness against whom accusations have been made, you have clearly defined rights. You have the right to know that allegations have been made and to be informed of the nature of the allegations.

4.  You also have the right to be represented, should the need arise for you to be interviewed concerning the allegations, and an opportunity to respond to any and all allegations made. A detailed summary of your rights is enclosed.

5.  If you have any further questions, please contact Ms. Stephanie M. Dawkins, EEO Manager at (703) 604-2738, Facsimile (703) 602-3491.

Encl                          *Stephanie M. Dawkin*
                          for  EMMA J. RUFFIN
                              Acting Director

Signature of Agency Witness                9.12.07
                                              Date



Printed on Recycled Paper        **50**



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADMINISTRATIVE ASSISTANT TO THE SECRETARY
US ARMY RESOURCES AND PROGRAMS AGENCY
·105·ARMY PENTAGON
WASHINGTON DC 20310-0105

orate of
Equal Employment Opportunity

JDRP-EE                                                        11 September 2007


MEMORANDUM FOR MR. STUART W. BOWEN, SPECIAL INSPECTOR GENERAL,
THE OFFICE OF SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION,
2011 CRYSTAL DRIVE, ARLINGTON, VIRGINIA  22202

SUBJECT:    Notification of Informal Discrimination Complaint


1.  This is to inform you that Ms. Denise N. Burgess, SES-4, Assistant Inspector
General for Public Affairs, a former employee within your organization, has filed an
informal EEO complaint of discrimination with this office, identifying you as an agency
witness.  Ms. Burgess alleges that she was discriminated against based on her race
(African American) and sex (Female) when:

    On July 23, 2007, she received a letter of Termination with the effective date of
September 1, 2007.

2.  As remedial relief the aggrieved seeks the following:

    Compensatory Damages for employment and salary (Prior employment).

3.  As the agency witness against whom accusations have been made, you have clearly
defined rights.  You have the right to know that allegations have been made and to be
informed of the nature of the allegations.

4.  You also have the right to be represented, should the need arise for you to be
interviewed concerning the allegations, and an opportunity to respond to any and all
allegations made.  A detailed summary of your rights is enclosed.

5.  If you have any further questions, please contact Ms. Stephanie M. Dawkins, EEO
Manager at (703) 604-2738, Facsimile (703) 602-3491.


Encl

                                    *for* EMMA J. RUFFIN
                                         Acting Director


_____              _____
Signature of Agency Witness                          Date




Printed on Recycled Paper        *51*



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADMINISTRATIVE ASSISTANT TO THE SECRETARY
US ARMY RESOURCES AND PROGRAMS AGENCY
105 ARMY PENTAGON
WASHINGTON DC 20310-0105

Directorate of
Equal Employment Opportunity

JDRP-EE                                                11 September 2007

MEMORANDUM FOR MS. GINGER M. CRUZ, DEPUTY INSPECTOR GENERAL, THE OFFICE OF SPECIAL INSPECTOR GENERAL FOR IRAQ RECONSTRUCTION, 2011 CRYSTAL DRIVE, ARLINGTON, VIRGINIA  22202

SUBJECT:   Notification of Informal Discrimination Complaint

1.  This is to inform you that Ms. Denise N. Burgess, SES-4, Assistant Inspector General for Public Affairs, a former employee within your organization, has filed an informal EEO complaint of discrimination with this office, identifying you as an agency witness.  Ms. Burgess alleges that she was discriminated against based on her race (African American) and sex (Female) when:

    On July 23, 2007, she received a letter of Termination with the effective date of September 1, 2007.

2.  As remedial relief the aggrieved seeks the following:

    Compensatory Damages for employment and salary (Prior employment).

3.  As the agency witness against whom accusations have been made, you have clearly defined rights.  You have the right to know that allegations have been made and to be informed of the nature of the allegations.

4.  You also have the right to be represented, should the need arise for you to be interviewed concerning the allegations, and an opportunity to respond to any and all allegations made.  A detailed summary of your rights is enclosed.

5.  If you have any further questions, please contact Ms. Stephanie M. Dawkins, EEO Manager at (703) 604-2738, Facsimile (703) 602-3491.

Encl                              for EMMA J. RUFFIN
                                      Acting Director

_____
Signature of Agency Witness                    Date


Printed on Recycled Paper



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADMINISTRATIVE ASSISTANT TO THE SECRETARY
US ARMY RESOURCES AND PROGRAMS AGENCY
105 ARMY PENTAGON
WASHINGTON DC 20310-0105

rectorate of
jual Employment Opportunity

JDRP-EE                                                                15 August 2007

MEMORANDUM FOR MS. DENISE N. BURGESS, 2000 SOUTH EADS STREET,
# 911, ARLINGTON, VIRGINIA  22202

SUBJECT:  Agreement to Extend Counseling

1.  By signing this agreement, you agree to allow up to an additional 90 calendar days for completion of counseling.  This will extend the counseling period to a maximum of 90 calendar days.  At or before the end of this period, the final interview will be conducted and you will be advised of your further rights unless you have entered into a settlement agreement resolving all issues.

2.  This voluntary agreement means that counseling on the matter(s) you first brought to my attention on 14 August 2007 will be completed no later than 12 November 2007}, 90] calendar days from initial contact.

_____          _____
Aggrieved                                              EEO Counselor


_____
Aggrieved's Representative (if applicable)



53



(Burgess, D) NRTF Memo and 2690 Form

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ETO

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Pat R.B_

B. Received by (Printed Name)   C. Date of Delivery
PAT H BIBB   10-24-07

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

☐ Agent
☐ Addressee

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7001 0320 0005 3148 4149   (SMD)

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



54



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

Postage
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees $

7001 0320 0005 3149 0409

Sent To
Mr. Hal Stein
Street, Apt. No.; Workforce Consultants
or PO Box No.
City, State, ZIP+4  7 Stonehenge Drive
Asbury Park, NJ 07711-3326

PS Form 3800, January 2001          See Reverse for Instructions

---

BURGESS, Denise N.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Hal Stein
Workforce Consultants
7 Stonehenge Drive
Asbury Park, NJ 07711-3326

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  □ Agent
                    ☒ Addressee
B. Received by ( Printed Name)   C. Date of Delivery
HAL STEIN                        8-31-07
D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:       □ No

3. Service Type
□ Certified Mail    □ Express Mail
□ Registered        □ Return Receipt for Merchandise
□ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
(Transfer from service label)    7001 0320 0005 3149 0409

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

3149
0409

55
§ Dawkins

USPS - Track & Confirm                                                    Page 1 of 1

 **UNITED STATES POSTAL SERVICE®**

Home | Help

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: 7001 0320 0005 3149 0355
Status: **Delivered**

Your item was delivered at 12:31 PM on September 1, 2007 in
DUMFRIES, VA 22025.

**Track & Confirm**

Enter Label/Receipt Number.

| 70010320000531490409 |

 (

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.  ( *Go >* )

 **POSTAL INSPECTORS**   site map   contact us   government services   jobs   **National & Premier Accounts**
**Preserving the Trust**      Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy





**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

7001 0320 0005 3148 4149

Postage   $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees   $

Burgess, D.
NRTF 2590

EEO

Sent To
**Ms. Denise M. Burgess**
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

PS Form 3800, Jan.

---

(Burgess, D) NRTF Memo and 2590 Form.



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

OCT 2007

Ms. Denise M. Burgess

EEO        (SMD)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Pat R.B_                    ☐ Agent
                               ☐ Addressee
B. Received by ( Printed Name)   C. Date of Delivery
PAT H. BINK                    10-24-07
D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)           ☐ Yes

2. Article Number
(Transfer from service label)   7001 0320 0005 3148 4149

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



3148
4149  S.D.
57

 **UNITED STATES POSTAL SERVICE.**

Home | Help

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: 7001 0320 0005 3148 4149
Status: **Delivered**

Your item was delivered at 1:46 PM on October 24, 2007 in
ARLINGTON, VA 22202.

**Track & Confirm**

Enter Label/Receipt Number.

---

**Notification Options**

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( *Go >* )

---

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

*58*